# Commonwealth *v.* Moody, Appellant.

*Criminal law—Conspiracy — Evidence — Declaration of coconspirators—Order of proof—Discretion of the court.*

On the trial of an indictment charging a conspiracy, where the evidence of the Commonwealth is sufficient, if believed, to establish an agreement, concurrence or combination, the fact that the court permitted coconspirators to be called and to testify before a conspiracy had been established does not constitute reversible error.

Abuse of discretion in controlling the order of proof is not established, where it is inconceivable that the order adopted confused the jury or misled the defendant.

Where the offense charged is a conspiracy to cheat and defraud by promises to procure protection from prosecution for violation of laws, evidence that money was paid upon the faith of such promises, and that the person to whom the payment was made gave assurances of protection, and that thereafter no prosecution followed, is admissible against one of the alleged conspirators.

Argued April 10, 1922.     Appeal, No. 167, April T., 1922, by judgment of Q. S. Mercer County, June Sessions, 1921, No. 48, on verdict of guilty, in the case of Commonwealth of Pennsylvania v. J. H. Moody. Before ORLADY, P. J., PORTER, HENDERSON, TREXLER, KELLER and LINN, JJ. Affirmed.

Indictment for conspiracy. Before McLAUGHRY, P. J.

The facts are stated in the opinion of the Superior Court.

Verdict of guilty, upon which judgment of sentence was passed. Defendant appealed.

*Errors assigned,* inter alia, were refusal to grant new trial, refusal to direct an acquittal, the sentence and judgment of the court, and various rulings on evidence.

*Fred A. Service,* of *Service & McNeal,* and *Jas. A. Stranahan, Jr.,* of *Stranahan and Sampson,* for appel-

lant.—Before the declarations of alleged coconspirators
are admissible in evidence, the Commonwealth must offer
some evidence to establish a conspiracy : Com. v. O'Brien,
140 Pa. 555; Marshall v. Faddis, 199 Pa. 397; Com. v.
Boules, 35 Pa. Superior Ct. 102; Com. v. Duffy, 49 Pa.
Superior Ct. 344.

*C. E. Brockway,* and with him *J. M. Hittle, W. G.
Barker* and *L. R. Rickard,* District Attorney, for ap-
pellee.—A large discretion is allowed to the presiding
judge in the admission of evidence on a trial for con-
spiracy : Com. v. Moyer, 52 Pa. Superior Ct. 554.

No overt act need be proved to sustain a conviction on
the charge of conspiracy : Com. v. Richardson, 229 Pa.
611; Com. v. Tilly, 33 Pa. Superior Ct. 38.

OPINION BY LINN, J., July 13, 1922 :

Appellant was convicted of conspiracy.   On appeal he
contends there was error : 1, in receiving declarations of
coconspirators before proof of conspiracy; 2, in ad-
mitting evidence of some general conspiracy not charged
in the indictment; 3, in not instructing the jury the pros-
ecutor was an accomplice; 4, in not directing an ac-
quittal.

Appellant was a justice of the peace serving his sev-
enth year in office; he was also serving his eighth year
as burgess of the Borough of Farrell in Mercer County.
George Duleba was a policeman of Farrell.  Steve Dzapo
was one of a number of Croatians, residing in Farrell and
concerned in the trial.   Moody, Duleba and Dzapo were
charged with conspiracy in an indictment in three counts.
The first count charged them with conspiracy with other
unknown persons to extort from Spiro Yanich "large
sums of money, to wit......Fourteen hundred dollars
and upwards......" to procure exemption from prose-
cution for the unlawful sale of liquor and other violations
of law.   The second charged them with conspiring "to
cheat and defraud the said Spiro Yanich of large sums

......to wit Fourteen hundred dollars......" Neither of those counts charged an executed conspiracy. The third count does so charge, alleging that the same three persons conspired to cheat and defraud Yanich of Fourteen hundred dollars and "that thereupon, in pursuance of their unlawful......conspiracy......they......by divers unlawful......pretences to the effect that they ......would obtain, procure and maintain the protection, freedom and exemption from due and legal prosecution of the said Spiro Yanich for the selling of liquor without a license and other violations of the laws of the Commonwealth.....did then and there unlawfully..... obtain from the said Spiro Yanich the sum of Fourteen hundred dollars.....consideration......for.....maintaining......exemption from the due and legal prosecution of the said Spiro Yanich for the selling of liquor without a license and other violations of the law."

Two of the alleged conspirators, Duleba and Dzapo, testified for the Commonwealth. Spiro Yanich and his partner George Struyna, conducted a pool room in Farrell. In consequence of a dispute there, Yanich ejected Joe Lunich from the room. Lunich then caused the arrest of Yanich, who was charged with disorderly conduct and carrying concealed deadly weapons. Appellant went to the police station house on the morning of December 4, 1920, and found Yanich there to answer those charges. He was convicted and fined by appellant, who testified that the prosecutors Lunich and Yankovitch were dissatisfied with the fine imposed on Yanich, and then accused him of the illegal sale of liquor, whereupon appellant drafted an affidavit so charging Yanich, which Lunich and Yankovitch executed. A hearing was immediately had on that charge and both testified that on the 3d of December they had bought whiskey from Yanich. Thereupon appellant held Yanich for court and fixed bail at $1,500. Several hours later bail was given, with Joe and Mary Bedar as sureties. Appellant then duly executed a transcript of the proceeding, but did not return it as required

by law.  Up to this point in the case there is no dispute about what happened.

It may lead to a clearer understanding of the matters for discussion, if we now refer to parts of the evidence upon which the jury may have based its conclusion that the alleged conspiracy existed.

On December 5th, appellant came into Basivic's saloon, while Dzapo, Yanich, Lunich and Yankovitch were there. Moody requested Dzapo to explain to Lunich and Yankovitch in their language as follows: "Steve, tell these boys I think they [including Yanich] were old friends, and they come from the same country, and I no send that case to Mercer yet.  If they are willing to withdraw this information, I am willing to do it."  Lunich and Yankovitch "promised to withdraw the information."  On December 6th Dzapo went to Yanich and told him the prosecutors would withdraw the charge and that "he has a chance to settle this case here and not send it to Mercer."  Yanich replied that "his partner had seen George Duleba already."  Dzapo then told Yanich that "the case could be settled for $600."  On December 7th Yanich and his partner brought that sum to Dzapo's house where he and Duleba were waiting for Yanich.  Dzapo says he received the money from Yanich and handed it to Duleba who gave him $150, saying "This is for your trouble."  When Yanich paid the money he demanded his bond and was instructed to see Moody about that.

Duleba testified that he was talking to Lunich and Yankovitch on the street when Dzapo came along and informed Duleba "if these two boys would withdraw that information we could make a little money out of this deal"; the interview resulted in Duleba's taking the prosecutors to appellant's office to withdraw the charge. There, Duleba acted as interpreter and told appellant that "These two prosecutors told me they made a mistake and wanted to withdraw the information."  Yanich was present.  Appellant testified that both Lunich and Yankovitch said they had made a mistake in charging Yan-

ich; that "they had got it [whiskey] from the partner [Struyna] or clerk," (of Yanich and Struyna). He explained that he required them to make an affidavit which he prepared stating the reasons for withdrawing the charge. It was offered in evidence on his behalf and the reason given for their conduct is as follows: "We made a mistake in the man whom we thought sold us the liquor, it was not him but a man who looked very much like him." There was evidence that Yanich and the prosecutors not only lived in Farrell but had come from the same part of their native country, where they had known each other. Yanich testified that after he was held for court, he met Duleba who said "he will settle this and fix it up for $600," and that "Mr. Dzapo came to me next day, and he said that Mr. Moody said he will settle this for $600." He then borrowed the money from Bedar, and, accompanied by Struyna his partner, took it to Dzapo's house where he found Dzapo and Duleba waiting to receive it. Struyna was not called as a witness, the record stating that he had returned to Europe before the trial. Yanich also testified that when he paid the money he asked for "that paper of the bail" and was told he must apply to Moody for that. He went to Moody and at this point the record shows the following:

"Q. And what did you say to him?

"A. He asked me first 'Did you see Dzapo?'

"Q. What did you say?

"A. I said 'Yes, I gave him and Mr. Duleba $600.'

"Q. And what else was said?

"A. And I said I wanted the paper, and he said 'You don't need no paper.'

"Q. What did you say in reply?

"A. I said 'If you don't want to make me the paper, I want my money back.'

"Q. Then what did he do?

"A. Then he said 'All right.' He went into the office and brought me out a paper.

"Q. What paper did he bring you out?

"A. The paper of the bail.

"Q. Did he say anything?

"A. He said that I should not give this to anyone."

The document handed to Yanich by appellant was offered in evidence; it was part of the transcript of the justice of the peace, and on the back of it, was the bond signed by Yanich and his sureties. After the payment of the $600 by Yanich to Duleba, he paid other sums to him during the first half of 1921, for which Duleba told him he would be protected in the illegal sale of liquor. Duleba testified that from three to five days after receiving the money "I walked into Moody's office and handed him $150" of the money received at Dzapo's, although, he says, he had not talked to Moody at any time about the matter.

Moody and Dzapo acted together in that part of the transaction described as occurring in Basivic's saloon; Dzapo and Duleba acted together in the matter as already described; Duleba and Moody are directly connected in the withdrawal of the prosecution and in the distribution of the money. All this logically leads to the single conclusion that there was intended unity of purpose in the three men; it is not susceptible of any other explanation, if believed, and that responsibility is with the jury. It is therefore clear that the record shows that there was a time in the Commonwealth's case when the evidence of agreement, concurrence or combination was complete.

With that conclusion established, we shall now examine appellant's contentions as stated above.

First. Error is alleged in receiving declarations of a coconspirator before there was evidence of the conspiracy. The applicable rule was thus stated by Judge HENDERSON: "A large discretion is allowed to the presiding judge in the admission of evidence on a trial for conspiracy having numerous actors and shifting scenes of action as the fact of conspiracy is often made out by the association of detached facts and by the reasonable

inference deducible therefrom": Com. v. Moyer, 52 Pa. Superior Ct. 548, 554, 555; see also Com. v. Deutsch, 72 Pa. Superior Ct. 298, 310; 1 R. C. L. 521; Wigmore on Evidence, sections 1079, 1867, 1871.

It is not apparent that the large discretion confided to the court to control the order of proof was unwisely exercised in this case. The Commonwealth had to begin somewhere and could prove but one fact at a time, and, as we have endeavored to show, when the case was closed there was evidence sufficient to find the concurrence of Moody, Duleba and Dzapo to extort money from or to cheat and defraud Yanich, and the jury so concluded. The declarations complained of were part of the res gestæ under investigation. It is not conceivable that the jury was confused by the order of proof permitted, nor is it pretended that defendant was misled thereby. The assignments raising the point are overruled.

Second. By the remarks of counsel in argument during the trial, it appears that Moody was also under indictment at the same term for another conspiracy, the scope of which is not reported in this record. The trial of that indictment seems to have been postponed a week. Objection to questions by the Commonwealth, was made upon the ground that the answers could not be relevant in this trial, but concerned the conspiracy charged in the other indictment not being tried. The eighth assignment of error accordingly complains that Yanich was permitted to answer the following question: "Q. Did you pay money to any one of the three—Mr. Moody, Mr. Duleba or Mr. Dzapo? By Mr. Service. That is objected to, as there is no count in the indictment which alleges that we took any money through a conspiracy to permit any man to violate the law." The objection was overruled and an exception was taken, and the answer ultimately was that after the $600 already referred to had been paid, he paid Duleba $75. The ninth and tenth assignments complain because Yanich was permitted to say that since the payment of the $600, he had not been ar-

rested for "selling liquor or violating the law in any way," and that Duleba told him he was protected.

We are unable to discover why the answers given are not relevant to the charge. The indictment is in three counts, as we have stated. The jury has found the conspiracies to extort, and to cheat and defraud existed, and that money was extorted thereby. In the first count it was charged that the conspiracy involved the taking of money from Yanich "for his protection and exemption from the due and legal prosecution for the sale of liquor without a license, and other violations of the laws of the said borough and Commonwealth......" It was certainly relevant under that count to show that the conspirator to whom he paid the $600 received other money from him and told him that he was protected. The record shows that when the Commonwealth proposed to prove anything relating to any conspiracy other than those charged in this indictment, the court excluded the evidence or struck out what was irresponsively interjected by witnesses.

Third. Several assignments of error complain of the refusal to instruct the jury that Yanich was an accomplice with Duleba, Dzapo and Moody. It is difficult to see how he could conspire to cheat and defraud himself or to extort money from himself. He undoubtedly violated the law and admitted it, but he was not an accomplice in a legal sense with the three conspirators. He could not have been indicted as principal or accessory for the conspiracies for which defendant was indicted and convicted: Com. v. Wasson, 42 Pa. Superior Ct. 38, 57; Com. v. Feist, 50 Pa. Superior Ct. 152, 157; Com. v. Bricker, 74 Pa. Superior Ct. 234, 239; 1 R. C. L. 157, 161. No complaint is made of the instructions given to the jury as to the weight to be given to the evidence of appellant's accomplices.

Fourth. This court is unanimous in its conclusion that the evidence offered by both sides was properly received, and was fairly and legally submitted to the jury.

It was the province of the jury to find the facts from that evidence and it is apparent by what has already been said concerning the charges made and the evidence offered that its verdict is responsive to the issue.

There was evidence that the night before the trial Moody sent for Yanich and offered to him $2,500 to leave Farrell. Moody denied it and called witnesses to corroborate him in the statement that Yanich came to him and proposed to leave Farrell if Moody paid him $3,000. Moody also explained that he assented to the withdrawal of the prosecution because he had been told that he should not return transcripts in cases where conviction could not be obtained. He had the benefit of everything offered in his defense, and it was the jury alone who could find the facts.

Complaint is made of the refusal to direct a verdict for the defendant, upon the ground that the indictment charged a conspiracy to extort fourteen hundred dollars, whereas the evidence showed that the amount obtained was less. There is no merit in the contention: Com. v. Dingman, 26 Pa. Superior Ct. 615, 622.

All the assignments of error are overruled, and we should perhaps say, that while we have considered every assignment, many do not comply with rule 16 requiring the evidence admitted over objection to be incorporated in the assignment, or, the evidence which the court refused to strike out, to be set forth in the assignment.

The judgment is affirmed and it is ordered that the defendant appear in the court below at such time as he may be there called and that he be by that court committed until he has complied with the sentence or any part of it which had not been performed at the time the appeal in this case was made a supersedeas.