## Commonwealth of Pennsylvania v. Hoffman, Appellant.

Argued September 28, 1931.

Before Trexler, P. J., Keller, Linn, Gawthrop, Cunningham, Baldrige and Drew, JJ.

Orrin E. Boyle, and with him Forrest J. Mervine, for appellant, cited: Commonwealth v. Sanderson, 40 Pa. Superior Ct. 484; Commonwealth v. Valverdi, 32 Pa. Superior Ct. 246; Commonwealth v. Stovas, 45 Pa. Superior Ct. 46.

Ira A. LaBar, District Attorney, for appellee, cited: Commonwealth v. Stambaugh, 22 Pa. Superior Ct. 386; Commonwealth v. Spencer, 6 Pa. Superior Ct. 256.

OPINION BY KELLER, J., November 20, 1931:

The appellant was separately indicted, charged with having conspired with Jensen Shaw, Ezra Kunkle and divers other persons, whose names were unknown, (1) to assault Loring Kresge, Horace Storm and other persons employed at the Mammoth Hosiery Mills; (2) to throw stones upon, against and through the dwelling houses of Loring Kresge and certain other named persons, and other persons employed at said Mills; (3) to damage and destroy the automobiles of Floyd Andes and other persons employed at said Mills; (4) to feloniously assault Horace Storm and certain other named persons employed at said Mills; (5) to feloniously force from the highway and wreck the automobiles of Arthur L. Storm and other persons employed at said Mills. He was convicted on the first three counts and acquitted of the fourth and fifth.

He has filed sixty assignments of error, which by reason of their raising similar questions may be treated under six heads.

(1) The first assignment complains of the refusal of the court below to quash the indictment. As the motion to quash is not printed by the appellant and we have no certain knowledge on what grounds it is based, the assignment must be overruled. If, as is probable, it refers to the same matters treated under the next two heads, it may be considered as likewise overruled on the merits.

(2)  As may be gathered from the indictment, the prosecution grew out of a strike of the employes of the Mammoth Hosiery Mills in Stroudsburg.  The defendant was not, and never had been, an employe of that mill.  He was a representative of the American Federation of Full Fashioned Hosiery Workers, who, at the invitation of certain employes of the mill, came from Reading to Stroudsburg, when a strike was in contemplation, to consult and advise as to the course to be pursued.  The American Federation of Full Fashioned Hosiery Workers had no branch or union in Stroudsburg and the workers at the Mammoth Hosiery Mills were not members of it.  Defendant, however, claims that he cannot be convicted of the conspiracy charged in this indictment because of the provisions of the Act of June 16, 1891, P. L. 300, entitled, "An Act to relieve employes from certain prosecutions and punishments for conspiracy, under common law or under the criminal laws of this Commonwealth" which is copied in full in the margin.

"Section 1.  Be it enacted, &c., That it shall be lawful for employes, acting either as individuals or collectively or as the members of any club, assembly, association or organization, to refuse to work or labor for any person, persons, corporation or corporations, whenever in his, her or their opinion the wages paid are insufficient, or his, her or their treatment is offensive or unjust, or whenever the continued labor or work by him, her or them would be contrary to the constitution, rules, regulations, by-laws, resolution or resolutions of any club, assembly, association, organization or meeting of which he, she or they may be a member or may have attended, and as such individuals or members or as having attended any meeting it shall be lawful for him, her or them to devise and adopt ways and means to make such rules, regulations, by-laws, resolution or resolutions effective, without subjecting them to indictment for conspiracy at common law or under the criminal laws of this Commonwealth;

Provided, First: That this act shall not be held to apply to the member or members of any club, assembly, association, organization or meeting, the constitution, rules, regulations, by-laws, resolution or resolutions of which are not in conformity with the Constitution of the United States and to the Constitution of this Commonwealth.

This Act is almost a re-enactment of the Act of June 14, 1872, P. L. 1175, as construed by its supplement of April 20, 1876, P. L. 45, with the exception (1) that the title of the Act of 1891 refers to "employes" generally, instead of to "laborers, workingmen and journeymen," and (2) the third proviso of the Act of 1891 definitely excepts conspiracy to commit a felony from the immunity granted such employes by the prior provisions of the statute. It is clear from the language of the Act, its title, and its history as above outlined, that it refers only to persons who are or were employes of another person or a corporation, but who have refused to work for their employer because of the reasons set forth in the statute; in other words, to "employes on strike;" and that it has no reference, and extends no immunity from prosecution, to persons other than such striking employes, even though they may be employes of some other person, association or corporation. The employes who receive the immunity from certain prosecutions under the Act are clearly those who have refused to work and labor for their employers, for the reasons mentioned in the Act, and not outsiders, who violate the law, or conspire to do so, even with the idea of aiding or assisting the strikers, and even though they may be employes of, and working for, some other employer.

(3) Appellant asks in his statement of questions involved, Can one person alone be guilty of the crime

Provided, Second: That nothing herein contained shall prevent the prosecution and punishment, under any law, other than that of conspiracy, of any person or persons who shall, by the use of force, threats or menace of harm to person or property, hinder or attempt to hinder any person or persons who may desire to labor or work for any employer from so doing for such wages and upon such terms and conditions as he, she or they may deem proper.

And provided, Third: That nothing herein contained shall prevent the prosecution and punishment of any persons conspiring to commit a felony."

of conspiracy? Can a conviction for conspiracy be sustained where the indictment does not charge and there is no proof that any one conspired with the defendant? The answer to both questions is, of course, No. But that is not this case.

Appellant was charged with having conspired with Jensen Shaw and Ezra Kunkle and "divers other evil disposed persons whose names are unknown" to do certain unlawful and criminal acts; and there was evidence which supported the charges. The fact that Jensen Shaw and Ezra Kunkle were employes of the Mammoth Hosiery Mills on strike and within the immunity clause of the Act of 1891, supra, as respects a prosecution for conspiracy for devising and adopting ways and means to make their action effective, and even, perhaps, for conspiracy to "hinder or attempt to hinder any person or persons who might desire to labor or work" for their employer "by the use of force, threats or menace of harm to person or property," did not make what was inherently unlawful, lawful, but at most granted them immunity from prosecution for conspiracy to do such unlawful acts; and did not extend such immunity to any one not within the provisions of the Act of 1891 who might conspire with them. If the Act of 1891 is constitutional, and we pass no judgment on that question, Shaw and Kunkle could combine, federate and agree with one not within the terms of the Act of 1891 to do the unlawful acts therein mentioned and thus be guilty of conspiracy, but could not be prosecuted and punished for so conspiring; but if this appellant conspired with them to do such unlawful and criminal acts, he might be indicted, convicted and punished for so conspiring, although they could not. We think this view is consonant with the language of the Supreme Court in the case of Erdman v. Mitchell, 207 Pa. 79, relied on by the appellant, where it is said: "Trade unions may

cease to work for reasons satisfactory to their members, but if they combine to prevent others from obtaining work by threats of a strike, they combine to accomplish an unlawful purpose, a purpose as unlawful as it always was, though not punishable by indictment'' (p. 92). ''It is unlawful to deprive a mechanic or workman of work by force, threats or intimidation of any kind; a combination of two or more to do the same thing by the same means is conspiracy. That by the legislation referred to [Acts of 1872, 1876 and 1891, supra], such conspiracy is no longer criminal, does not render it lawful'' (p. 91). That case did not decide that such conduct could not, in fact, constitute an indictable conspiracy, but only that it could be restrained by injunction. It assumed, for the purpose of the case, that the defendants could not be indicted for conspiracy, while holding that they could be enjoined; but it must be read in the light of its own facts, and two-thirds of the employes working on the building involved in that case were members of the unincorporated trade union which called the strike and were enjoined from continuing the unlawful acts complained of. The court was not considering the position of an outsider, who might conspire with striking employes to do unlawful and criminal acts for which the latter might not themselves be answerable by prosecution for conspiracy.

But whether we are right in this view or not, the indictment also charged a conspiracy by appellant with divers other persons, and there was evidence to sustain this charge. It is immaterial that such persons were not indicted with the defendant. ''One of two or more conspirators may be separately indicted, tried and convicted,'' and the fact that A. has not been indicted with B. is immaterial if it sufficiently appears from the record that he was a confederate: Heine v. Com., 91 Pa. 145, 149; Com. v. Stambaugh, 22 Pa. Superior Ct. 386, 388; Com. v. Boulos, 35 Pa. Superior

Ct. 102, 105; Com. v. Smith, 97 Pa. Superior Ct. 157, 163. In Com. v. Faulknier, 89 Pa. Superior Ct. 454, the indictment charged a conspiracy between Faulknier, Fiat and Bowman only, by name. They were convicted, but a new trial was granted to Fiat and Bowman. This court held that Faulknier should not have been *sentenced* until it was determined on the second trial whether one of the other two was convicted, for Faulknier could not be convicted and sentenced if both of his alleged confederates were acquitted. But we did not hold that Faulknier could not have been separately indicted, tried and convicted for conspiring with Fiat and Bowman, even though his alleged confederates were not indicted or tried. In Com. v. Jermyn et al., 101 Pa. Superior Ct. 455, Pride, an alleged co-conspirator, was neither indicted by name nor tried. In Com. v. Bonnem, 95 Pa. Superior Ct. 496, Carl Bonnem and his father, Edward Bonnem, were charged with having conspired with each other and divers other evil disposed persons to cheat and defraud the respective prosecutors. Owing to the father's illness the son was separately tried, convicted and sentenced. Edward Bonnem, the father, subsequently died and we sustained the conviction against the son. The subject is treated fully in that case by our Brother CUNNINGHAM and the principle recognized, that one of two or more conspirators may be separately indicted and tried, or separately tried if jointly indicted, and, upon conviction, may be legally sentenced, if it appears from the record that there was a confederation between him and one or more other persons, and this although his confederate or confederates may not be indicted or brought to trial.

(4) A large majority of the assignments are directed to the admission or rejection of evidence. In some cases evidence which at first was excluded was later received, after the facts had been further de-

veloped, and the original error, if any, was thereby cured. In others the answers to the objected questions could not possibly have hurt the defendant. For example, what possible harm could be done the appellant, by the question and answer, "Were you during the months of February and January an employe of the Monroe Hosiery Mills?" Answer "Yes"? (Assignment 32.) In two instances (Assignments 12 and 14) the answers, which were not responsive to the questions, were at once stricken from the record by the court, though the assignments fail to reveal this action. In cases where questions of the appellant's counsel were disallowed on exception, no offer was made of what it was proposed to prove by the examination, and the question itself did not reveal the purpose. In others, the questions were properly ruled out as leading. In some cases the answer to the objected question is not given (Rule 26). In others the assignment is but an incomplete fragment from the examination, the whole of which cleared up any possible objection. We have examined them all, but the only ones that merit any special reference are those which have to do with testimony as to overt acts alleged to have been done following and pursuant to instructions from the defendant, or from those associated with him, in his presence and hearing. These were properly admitted because, if the testimony was believed, they were the natural result or consequence of the unlawful combination or conspiracy, and thus were directly connected with it. The alleged improbability of the evidence, emphasized by the appellant's counsel, was a question for the jury, not for us. The fact that Wilbur Heller, who was accused by Horace Storm of attacking him, had been acquitted of that charge in a separate prosecution, did not render the evidence inadmissible in this case: Com. v. Flick, 97 Pa. Superior Ct. 169, 172. The acts, as well as the

declarations, of a conspirator in furtherance of the common purpose are evidence against himself and his associates when made during the performance of the transactions which constitute the crime charged, for they form part of such transactions: Heine v. Com., supra; Com. v. Bingle, 62 Pa. Superior Ct. 105; Com. v. Jermyn, supra; and it is immaterial that they are not immediately directed to the commission of the specific unlawful acts laid in the indictment as the object of the conspiracy, if they are so connected with it as reasonably to tend to the furtherance of the common purpose.

(5) The appellant complains because the court in its charge said by way of introduction to its presentation of the Commonwealth's contention: "There are certain courses of action here that seem convincing that there must have been an understanding or an agreement to do certain things by the course of action that was pursued by the parties concerned." The evidence of such concerted action was overwhelming, and justified the statement of the court below, which however, did not direct the jury to find it as a fact, and in no way intimated that the defendant was concerned or connected with such concerted action, which was the real point in issue in the trial. The trial judge commits no error in suggesting to the jury the existence of an obvious fact, when he does not impose his suggestion as a binding direction upon them and, especially, when he says nothing to lead the jury to infer that he has any opinion as to the connection of the defendant with that fact.

(6) The case was well tried, the defendant had a fair trial and the verdict was warranted by the evidence. In the absence of reversible error in the trial of the case, we find no abuse of discretion in the refusal of the court below to grant a new trial.

The assignments of error are overruled. The judg-

ment is affirmed, and it is ordered that the defendant appear in the court below at such time as he may be there called, and that he be by that court committed until he has complied with the sentence or any part of it which had not been performed at the time the appeal in this case was made a supersedeas.