## Commonwealth *v.* McConaghy, Appellant.

Argued September 28, 1942.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, RHODES, HIRT and KENWORTHEY, JJ.

*John S. Powers,* for appellant.

*Alvah M. Shumaker,* Assistant District Attorney, with him *Leroy K. Donaldson,* District Attorney, for appellee.

OPINION BY BALDRIGE, J., December 11, 1942:

Oliver A. McConaghy, the appellant, was convicted of driving an automobile under the influence of intoxicating liquor and involuntary manslaughter. In this appeal he challenges the sufficiency of the evidence to

sustain a conviction and complains of the trial judge's charge.

About 6:30 on the evening of December 6, 1941, McConaghy was driving his car west on East Washington Street, 30 feet wide, in a built up section of the city of New Castle. Archie C. Johnson, 71 years of age, walked from a store on the south side of East Washington Street, passed in the rear of a car parked about one half on the street and one half on the paved area in front of the store and was almost instantly struck by defendant's car. Johnson, who weighed 200 pounds or more, was discovered lying some 40 feet distant from where he was struck, suffering severe injuries from which he died two hours thereafter. Hannah Pfieffer, who followed Johnson out of the store, attempted to cross East Washington Street by passing in front of this parked car. She stated that she had to jump back to prevent being struck by defendant's car which was being driven on the wrong side of the street at a speed of 60 miles per hour. Two other witnesses, both experienced drivers, corroborated Mrs. Pfieffer as to defendant's excessive speed.

McConaghy immediately after this occurrence left his car standing in the street where the police shortly thereafter observed it being moved by a friend of McConaghy's named Reiter, in to whose apartment, which was nearby, they immediately went. There they found the defendant drinking black coffee. The two police officers, who then brought him to the police station, said that when he was in their custody they concluded from the odor of his alcoholic breath and his staggering gait that he was intoxicated. A physician who examined the defendant about 7:25 P.M. at the police station stated that he was intoxicated at that time.

Defendant denied he was intoxicated but admitted being at the "Pines" a drinking place on East Washington Street for two hours and a half preceding the

accident, where he drank three glasses of beer. He testified that after his car struck Johnson he went to Reiter's apartment to wash the blood off his hands and shirt and had a drink of whiskey along with black coffee. Defendant claimed he was driving only thirty to thirty-five miles per hour on the right side of the highway when deceased suddenly appeared in front of his car.

The evidence was clearly sufficient to sustain a conviction, both on the charge of driving while under the influence of intoxicating liquor (*Commonwealth v. Kerns*, 124 Pa. Superior Ct. 61, 188 A. 81; *Commonwealth v. Long*, 131 Pa. Superior Ct. 28, 198 A. 474) and involuntary manslaughter (*Commonwealth v. Aurick*, 342 Pa. 282, 19 A. 2d 920; *Commonwealth v. Mayberry*, 290 Pa. 195, 138 A. 686; *Commonwealth v. Gill*, 120 Pa. Superior Ct. 22, 182 A. 103).

There is no merit in appellant's contention that his unlawful act or reckless conduct was not the proximate cause of Johnson's death. If the jury believed that defendant was driving at sixty miles per hour on the wrong side of the street, or struck deceased as the result of his intoxicated condition, causation was definitely established: *Commonwealth v. Gill*, supra, p. 35; *Commonwealth v. Aurick*, supra, p. 286.

Appellant objects that the court in its charge referred to a written statement signed by him in the presence of the police as a "confession." The trial judge in his opinion concedes that word was used inaptly and inadvertently. The statement, offered in evidence by the commonwealth, was not strictly a "confession" in the sense of it being a voluntary admission of guilt of the offenses charged, but it did contain admissons as to certain basic facts. It established defendant's identity as the person involved in this fatal accident, that after drinking beer he drove his car and struck Johnson; that he left the scene of the accident

and went to his friend Reiter's apartment. The trial judge however, did not give this statement undue weight in this charge. In defining a "confession" as "a statement by a person charged with crime which tends to implicate him in the crime" he clearly explained to the jury that the statement was not to be considered as an admission of guilt. The jury had it as part of the evidence and no doubt read what it contained. It is quite inconceivable that it was considered by them as a "confession" of guilt especially in view of the judge's explaining the limited sense in which he used that word.

In *Commonwealth v. Riggs,* 313 Pa. 457, 460, 169 A. 896, Mr. Justice LINN, speaking for the court, said: "Another assignment complains that the judge said that defendant made a 'detailed statement admitting the crime with which he was charged in the indictment.' But the charge clearly shows that the judge did not mean that defendant admitted that he was guilty of murder in the first degree: Cf. *Com. v. Exler,* 243 Pa. 155, 157, 89 A. 968; *Com. v. Berkenbush,* 267 Pa. 455, 110 A. 263. The jury could only understand the statement to mean that the defendant admitted his participation in the occurrence in the manner described by himself and other witnesses and charged in the indictment. Taken with the whole charge, the statement was not prejudicial: *Com. v. Johnson,* 279 Pa. 40, 123 A. 638."

Appellant's second and third statement of questions involved may be considered together. Complaint is made that the court in its charge improperly limited the effect to be given defendant's evidence of good reputation. The defendant's tenth point on this subject reads: "Evidence of good character is not a mere makeweight thrown in to assist in the production of a result that would happen at all events, but is sub-

stantive evidence that may by the creation of a reasonable doubt work an acquittal."

The court's answer was as follows: "As modified that Point is affirmed. It is proper to point out, however, that evidence of good reputation is not evidence of the same character as evidence of eye witnesses, because it doesn't go directly to the point of proving that the defendant didn't commit the offense. It goes to the point of proving that the defendant probably would not have committed the offense. It goes to the probabilities of the matter. You will take that evidence, however, and consider it carefully along with all the other evidence in the case and give it an appropriate place in your verdict."

The point was correctly drawn, and while it might well have been affirmed without any modification or further instruction we are of the opinion that the charge taken as a whole did not mislead or limit the jury in its consideration of the weight to be given respecting defendant's reputation for sobriety, peace, and good order. This is especially true as just before the trial judge read the tenth point he instructed the jury as follows: "Then there is the evidence of good character submitted by the defendant. I shall not read again the names of the witnesses; but what you are asked to find is that up to the time of this event the defendant had a good character or a good reputation among his fellows; and the defendant asks you to draw the conclusion that because he had such good character he would not forfeit it by engaging in unlawful conduct." The instructions were sufficiently clear for the jury to understand that the testimony relating to the defendant's good reputation was to be considered like any other evidence bearing upon the general issue: *Commonwealth v. Aston, (No. 1)*, 227 Pa. 106, 111, 75 A. 1017; *Hanney v. Commonwealth*, 116 Pa. 322, 9 A. 339; *Commonwealth v. Giovanetti*, 341 Pa. 345, 358, 359,

32

19 A. 2d 119. Considering the charge in its entirety on this point it is free from fundamental or basic error. Compare *Commonwealth v. Fugmann*, 330 Pa. 4, 22, 23, 198 A. 99. Although given an opportunity to do so by the court at the conclusion of its charge, counsel for appellant failed to make any specific objection to this or any other portion of the court's charge.

In *Commonwealth v. Howe*, 35 Pa. Superior Ct. 554, 566; *Hanney v. Commonwealth*, supra; *Commonwealth v. Cate*, 220 Pa. 138, 69 A. 322; and *Commonwealth v. House*, 223 Pa. 487, 493, 72 A. 804, cited by the appellant, instructions were given that evidence of good reputation could be considered only where defendant's guilt was doubtful, or where the facts did not otherwise establish his guilt, which is an entirely different situation than is present before us.

We have examined the charge as a whole and do not find as appellant contends that it is open to the objection of unduly stressing the commonwealth's evidence or of being argumentative.

Judgment is affirmed, and the record is remitted to the court below, and it is ordered that the defendant appear in that court at such time as he may there be called, and that he be by that court committed until he has complied with the sentence, or any part thereof which had not been performed at the time this appeal was made a supersedeas.