## Commonwealth *v.* Carnes, Appellant.

54

Argued April 18, 1949. Before RHODES, P. J., HIRT, RENO, DITHRICH, ARNOLD and FINE, JJ. (ROSS, J., absent.)

*F. Joseph Thomas*, with him *Leo I. Shapiro*, for appellant.

*Raymond P. Shafer*, District Attorney, for appellee.

OPINION BY FINE, J., July 15, 1949:

John D. Carnes was convicted by a jury of involuntary manslaughter and the court below dismissed his motion for a new trial. The defendant now contends that the court below erred (1) in admitting evidence that defendant had been drinking beer prior to the accident; (2) in its charge regarding such evidence, and (3) in refusing him further inquiry into the competency of William Thomas Greene, an eye-witness aged eight years.

On December 6, 1948, at about 4:00 p.m., deceased, Mrs. Mary McKibben, fifty-five years of age, was walking toward her home in an easterly direction along the northern berm of Route No. 6 in Pine Township, Crawford County. Route 6 at that point is about eighteen feet wide and the berm along the north side is approxi-

mately eleven feet wide. Along this berm there was a two foot open ditch and beyond the ditch a plowed field. Deceased was facing oncoming traffic as she proceeded easterly. Testimony regarding the condition of the highway was conflicting although it is undisputed that it had been raining. The berm and the plowed field were soft. The only direct evidence of speed was given by defendant who testified he was traveling easterly, in the same direction as deceased, at approximately thirty-five miles per hour. The last time the victim was seen alive, she was walking on the berm near a driveway entrance to the property of Mr. Gilliland, which extended in a northerly direction from Route 6. Defendant's car, shortly before the accident, was seen weaving from one side of the road to the other, before suddenly swerving to its right hand side of the road and striking the loose gravel from the driveway of a gasoline station on the south side of Route 6. Some of this gravel hit the window of the service station, attracting the attention of witnesses, Charlotte Oliver and James Robinson, who were inside the station. Defendant's car then veered diagonally across the road from the south to the north side, continued across the berm, hurtled the ditch, and proceeded a considerable distance into the plowed field, where the car turned over two or three times before coming to a stop. Carnes was found in an unconscious condition beside the car. Mrs. McKibben was found dead, lying in the ditch some seventy-five feet east from the point where she was last seen near this driveway. Groceries which she was carrying were scattered on the berm of the highway at the point where she was last seen alive; her shoes were near or between tire marks of the Carnes car as it crossed the berm. The tire marks of the automobile were apparent on the paved portion of the highway, on the berm, and across the ditch into the plowed field, indicating a diagonal course from the gaso-

line station driveway to the resting place of the car in the field.

No one actually saw Mrs. McKibben being struck. However, one witness testified that he last saw her a second or two prior to the accident walking on the berm, and about that time he observed defendant's car swerve suddenly from the gasoline station driveway across the road toward deceased. He could not then see Mrs. McKibben as she was screened by the Carnes car, but he did observe a cloud of dust and a shower of groceries about the place where he had previously seen her. This witness observed the car continue across the ditch. Another witness who was standing in the plowed field near the Gilliland barn, observed deceased walking along the northerly side of the highway. As he turned to look at a corn picker, he heard a crash, which caused him to observe defendant's vehicle as it hurtled into the plowed field and turned over two or three times before stopping.

Involuntary manslaughter consists of the killing of another without malice and unintentionally, but in doing some unlawful act not amounting to a felony or naturally tending to cause death or great bodily harm or in negligently doing some act lawful in itself or by the negligent omission to perform a legal duty. *Commonwealth v. Aurick,* 342 Pa. 282, 19 A. 2d 920; *Commonwealth v. Mayberry,* 290 Pa. 195, 138 A. 686; *Commonwealth v. Stosny,* 152 Pa. Superior Ct. 236, 31 A. 2d 582; *Commonwealth v. McConaghy,* 151 Pa. Superior Ct. 26, 29 A. 2d 348. Reckless driving upon a highway is an unlawful act. *Commonwealth v. Holman,* 160 Pa. Superior Ct. 211, 213, 50 A. 2d 720; *Commonwealth v. Godshalk,* 76 Pa. Superior Ct. 500.

Emil Bielo testified Carnes had a glass of beer in the Travelers Inn in Linesville about three fifty p.m., and was cautioned by the witness to be careful as "those roads get slippery now"; and Corwin Lewis testified he

saw defendant the same afternoon in Myers Cafe in the same village and "he didn't appear to be intoxicated." Defendant contends that the court erred in admitting this testimony and in its charge thereon to the jury.

Relying on *Critzer v. Donovan*, 289 Pa. 381, 137 A. 665, the defendant urges it was reversible error to admit the testimony of Bielo and Lewis. In that negligence case for recovery of damages, the court held, inter alia (p. 385) : "Standing alone the odor of liquor does not prove, nor is it evidence of, intoxication; joined with other facts it may become so: Com. v. Eyler, 217 Pa. 512. Hence it was error for the trial court to admit the evidence as proof of intoxication." That case is clearly distinguishable on its facts from the circumstances revealed by this record. In an action, wherein reckless or careless driving is the matter at issue, proof of intoxication would be relevant. Where the manner of the operation of the car is at issue, proof of the consumption of intoxicating liquors by the operator to show he was deprived of that clarity of intellect and control which he would otherwise possess, is highly relevant, particularly where other manifestations of the operation of the car "under the influence of intoxicating liquor" may be inferred from the evidence. Here there was an abundance of evidence from which defendant's reckless driving might be deduced excluding the testimony of the intoxicating drinks imbibed by him. Evidence that he had a few drinks preceding the accident was not necessarily offered to prove he was drunk or intoxicated. It does, however, aid, with other circumstances in showing the operation of the car "under the influence of intoxicating liquor" is related to the recklessness and lack of control [1] in the operation of his vehicle and is a facet of the relevant evidence dealing with the more general

---

[1] Defendant claims he lost consciousness and control of the car when sideswiped by an oncoming vehicle not observed by others at or near the scene.

subject, to wit, the criminal negligence of the defendant. His imbibing in any degree in these circumstances was relevant to establish and to explain reckless misconduct in the operation of his vehicle. *Commonwealth v. Long,* 131 Pa. Superior Ct. 28, 198 A. 474. Cf. 8 Blashfield, Cyclopedia of Automobile Law, §5475; 2 Wigmore, Evidence, § 235.

Illustratively of his recklessness and loss of control in the operation of the car we list: the car swerved back and forth across the highway just prior to the accident; it swerved to its right and sprayed gravel on the window of a gasoline station; it shot diagonally across the highway; it crossed an eleven feet berm, straddled a two foot ditch and turned over two or three times before coming to rest; and it traveled approximately one hundred feet after leaving the highway; the deceased's body was found seventy-five feet from the spot where her shoes and groceries were found. With such an array of evidence a verdict other than guilty would have been perverse. The testimony of Bielo and Lewis was relevant and material; the charge of the court was proper. Cf. *Commonwealth v. Buoy,* 128 Pa. Superior Ct. 264, 267, 193 A. 144.

"It was not necessary for the Commonwealth to prove that appellant was drunk or even intoxicated. . . . 'The expression, "under the influence of intoxicating liquor," covers not only all the well known and easily recognized conditions and degrees of intoxication, but any abnormal mental or physical condition which is the result of indulging in any degree in intoxicating liquors, and which tends to deprive one of that clearness of intellect and control of himself which he would otherwise possess. State v. Rodgers, 91 N. J. Law, 212, 102 A. 433; Words and Phrases (Third Series), vol. 7, p. 683': Com. v. Buoy, 128 Pa. Superior Ct. 264, at page 267, 193 A. 144, at page 145": *Commonwealth v. Long,* 131 Pa. Superior Ct. 28, 35, 198, A. 474. Assignments of error one,

two and seven are without merit and are, therefore, dismissed.

The defendant complains because he was not permitted to inquire further into the competency of William Thomas Greene, a witness who on the date of this accident was seven years old. When called as a witness defendant's counsel did not object to his competency and later subjected him to a lengthy and vigorous cross-examination. Shortly before the close of the Commonwealth's case, he was recalled for cross-examination and asked: "Q. You remember you took an oath yesterday and you swore to tell the truth? A. Yes. Q. Do you know what that means when you raise your hand and swear to tell the truth? A. Yes. Q. What does it mean? A. That I will tell everything I know. Q. And only the truth? A. Yes. Q. Do you know what happens if you don't tell the truth? Mr. Shafer: I object to this. Court: The objection is sustained. Exception noted for the defendant." The court below concluded that: "We are satisfied, after observing the witness and hearing the questions asked of him and the answers given by him, that this child met all the requirements and, therefore, saw no reason at the conclusion of his testimony to permit counsel for the defendant to inquire further into his competency." We recently had occasion in *Commonwealth v. Allabaugh,* 162 Pa. Superior Ct. 490, 58 A. 2d 184, to discuss the competency of minor witnesses. At page 492 we said: ". . . much must be left to the discretion of the trial judge in determining the competency of a witness of tender years (Piepke v. Philadelphia and Reading Railway Co., 242 Pa. 321, 89 A. 124)."

"The substantial test of the competency of an infant witness is his intelligence, and his comprehension of an obligation to tell the truth. The truth is what the law, under the rules of evidence is seeking, and if a full and present understanding of the obligation to tell it, is shown by the witness, the nature of his conception of

the obligation is of secondary importance . . . the witness clearly comprehended the difference between truth and falsehood, and his duty to tell the truth. That was the substance of qualification as a witness. *The trial judge in whose discretion the matter very largely rested was satisfied of the competency of the boy, and we are of opinion that his discretion was well exercised.*" (Emphasis added): *Commonwealth v. Furman,* 211 Pa. 549, 550, 60 A. 1089; *Commonwealth v. Troy,* 274 Pa. 265, 270, 118 A. 252. Cf. 2 Wigmore, Evidence, §507.

The assignments of error are overruled, the judgment is affirmed and it is ordered that the defendant appear in the court below at such time as he may be there called and that he be by that court committed until he has complied with his sentence or any part of it which had not been performed at the time the appeal in the case was made a supersedeas.