## Commonwealth *v.* Hradesky, Appellant.

Argued September 24, 1951. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS and ARNOLD, JJ. (GUNTHER, J., absent).

*Anthony Cavalcante,* with him *Joseph P. Matuschak,* for appellant.

*J. K. Spurgeon,* Assistant District Attorney, with him *Fred L. Brothers,* District Attorney, for appellee.

OPINION BY RHODES, P. J., November 15, 1951:

Frank Hradesky and James Paull were indicted for attempted extortion, attempted bribery, and conspiracy to commit extortion and bribery. In addition, Hradesky was charged with misconduct in office. Paull entered a plea of guilty to the charges against him, and became a witness for the Commonwealth at the trial of Hradesky, who was found guilty by a jury. He was sentenced by the Court of Quarter Sessions of Fayette County. On this appeal from judgment and sentence he does not question the sufficiency of the evidence to

sustain his conviction, but alleges that certain trial errors require that he be granted a new trial.

At the time of the commission of the alleged crimes, appellant was the Chief Assessor of Fayette County. The Commonwealth's evidence showed that appellant and Paull conspired to extort, and that they did extort $400 from Ralph Campbell, manager of the Wright Poster Advertising Company of Brownsville, Fayette County, on the representation that for such payment the advertising company's billboards or roadsigns would not be assessed for tax purposes. These billboards had not been assessed in the year 1950 or previous years. On a day in July, 1950, when Campbell was in appellant's office on other matters, appellant suggested that the advertising company had better be prepared for a tax program on their billboards. Later, on August 28, 1950, appellant met Campbell in a hotel lobby and told him, "in signing up your contracts for the coming year you had better be prepared to pay a tax." Campbell said he was willing to pay any reasonable tax that might be imposed.

Paull first contacted Campbell in Brownsville the morning of September 15, 1950, and, after some general conversation, told him, in substance, that for a payment of $700 the signs of the advertising company would be kept off the tax blotter, thereby saving the company about $2,000 a year in taxes. Paull said to Campbell: "Frank [appellant] will be down here at one-thirty . . . at the hotel for lunch, . . . you better be there to meet with him. . . . if you don't, you will be put on the blotter the next day and turned over to the commissioners on Monday." Campbell reported the matter to the authorities who instructed Campbell to continue negotiations with Paull in an effort to ascertain the extent of Paull's authority to act for appellant. Paull next arranged a meeting with Campbell and appellant in the latter's car on September 19th,

near the library in Brownsville. Appellant there told Campbell "whatever Jimmy [Paull] has told you is okay with me." Appellant and Paull both assured Campbell at this meeting that Wright Poster Advertising Company's structures would never appear on the assessment blotters of Fayette County providing the $700 was paid. Appellant urged Campbell to pay the money and get over with it, remarking "You know you can go to jail for a thing like this." Appellant went so far as to suggest that representatives of other outdoor advertising companies would be turned over to Campbell who could arrange "what fee they might be able to pay," and that "if they don't go along they are really going to get rocked." Campbell objected to a payment of $700 and the amount of the demand was reduced to $400.

Campbell reported his latest meeting with appellant and Paull to the authorities who referred the case to the state police. Campbell secured $400 from a bank in Uniontown and the police noted the serial numbers of the bills. Paull arranged to meet Campbell again on September 26th, but since appellant was not present Campbell did not pay over the $400. Campbell later met appellant and Paull in appellant's office on September 28th, at which time appellant suggested they put a nominal assessment on the billboards "to make it look good." When Campbell rejected this suggestion as ridiculous, appellant said: "Well, okay, hurry up and get this thing over with."

On October 5th, Paull called Campbell and urged him to come to the Square Tavern in Brownsville to meet appellant and Paull, at 7:15 p.m. When Campbell arrived Paull said that appellant had to leave to keep another engagement. After some conversation in Campbell's car, Campbell paid Paull the $400 since he had been instructed by the police to do so regardless of appellant's absence. As Campbell and Paull stepped out

of the car, the police, on a prearranged signal by Campbell, arrested Paull and found the $400 on his person.

In order to show a general scheme, plan, and design on the part of appellant to use his office for personal gain, the Commonwealth called several other witnesses from whom appellant had allegedly, in some instances with Paull's assistance, attempted to extort money on threat of higher assessments on property owned by them. Frank Magazine, owner of a construction business and lumber yard at Republic, Fayette County, which had been assessed for some years at $3,500, received a notice from appellant's office of an increase to $175,000. Magazine testified Paull interviewed him and stated that for a payment of $500 the assessment would be reduced to $10,000. Magazine offered $300; whereupon Paull called appellant on the telephone, and Magazine, listening on an extension in his own office, heard appellant tell Paull not to settle for $300 but to get the $500.

Clarence Dennis, an automobile dealer, also testified that appellant came to his place of business and demanded that Dennis deliver to him a new car worth $3,317, make the necessary one-third down payment, give him $500 in cash to use in paying off a bank loan, and accept in trade a used car which had a lien against it to the extent of its full market value, or $1,700. When Dennis refused appellant said: "Well, you might as well deal with me. You know I could raise your assessment. . . . You might as well put it out that way as any way."

The testimony of Dennis was offered by the Commonwealth in rebuttal, and received over the objection of trial counsel for appellant, and its admission is one of the complaints on this appeal. Appellant contends that the admission of testimony showing other offenses having no connection with those for which he was tried was error. This evidence was clearly admissible to show

scheme, plan, design, intent, and motive upon the part of appellant to use his office to extort money from taxpayers for his personal enrichment. Evidence of other offenses closely related to those charged is admissible for such purposes. *Com. v. Dempsey,* 146 Pa. Superior Ct. 124, 127, 22 A. 2d 76; *Com. v. Thurman,* 167 Pa. Superior Ct. 642, 646, 76 A. 2d 483; *Com. v. Darcy,* 362 Pa. 259, 282, 66 A. 2d 663. The admission of testimony not strictly rebuttal is within the discretion of the trial court, and if relevant the mere fact that it was received in rebuttal when it should have been offered in chief is not reversible error. *Com. v. Bell,* 166 Pa. 405, 413, 31 A. 123; *Com. v. Libonati,* 346 Pa. 504, 511, 31 A. 2d 95; *Com. v. Viscosky,* 83 Pa. Superior Ct. 96, 106. Appellant's accomplice Paull testified for the Commonwealth concerning the arrangement whereby he acted as the tool of appellant in attempts to extort money from property owners on threat of higher assessment. Paull testified, without objection, to at least two instances, in addition to the Magazine and Campbell cases, where he and appellant had attempted to obtain money from property owners, namely, in the cases of a taproom called The Pines and a hotel known as the White Pillars.

Appellant's contention that the trial judge committed error in limiting the introduction of defense evidence is entirely without merit. He was permitted to present his defense in great detail. Any error that may have resulted from the exclusion of defense testimony at one point was harmless as appellant was given full opportunity to make denials and explanations at another. *Com. v. Neill,* 362 Pa. 507, 516, 67 A. 2d 276; *Com. v. Balles,* 163 Pa. Superior Ct. 467, 471, 62 A. 2d 91; *Com. v. Hoffman,* 103 Pa. Superior Ct. 433, 440, 441, 157 A. 221. Appellant took the stand and testified at length in his own behalf. He admitted that he knew Paull and that he took several automobile trips with

him, but he denied ever discussing the question of assessments with Paull. Appellant admitted discussing assessments with Campbell and other witnesses for the Commonwealth, but he denied any wrongdoing in these matters. He was permitted to explain in detail, by calling other witnesses, how the assessments were made and the manner in which the records were kept. In addition he called a number of character witnesses.

It is alleged that the trial judge erred in admitting the declarations of a co-conspirator without proof of the conspiracy. Objection was made to the admission of testimony of the witness Campbell as to declarations made by Paull to Campbell concerning the assessment of the billboards. The trial judge admitted Paull's declarations, subject to later proof by the Commonwealth of the conspiracy. Later, ample evidence of a conspiracy to extort was introduced entirely aside from any declarations of Paull. For that matter, the Commonwealth had ample evidence to convict appellant without relying upon the testimony of the accomplice Paull. The trial judge properly instructed the jury that the conspiracy must be established before the acts and declarations of the conspirators would be admissible against each other. Admission of declarations of a co-conspirator, prior to proof of the conspiracy, was merely a matter of the order of proof, and as such within the discretion of the trial judge. *Com. v. Deutsch,* 72 Pa. Superior Ct. 298, 310; *Com. v. Moody,* 79 Pa. Superior Ct. 412, 417, 418. See *Com. v. Ott,* 154 Pa. Superior Ct. 647, 653, 36 A. 2d 838.

Three other points raised by appellant allege error in portions of the charge of the court. Appellant picks out isolated excerpts from the charge and claims that certain rhetorical questions injected in the charge had the effect of binding instructions for the Commonwealth. For instance, after reviewing the testimony of the Commonwealth's witness Campbell, the trial judge

made the following remarks, to which objection is now made: "Of course, if there is in your mind a reasonable doubt as to the truth of any testimony, such testimony should be rejected; but, on the whole, is there any doubt in your mind as to the reliability of Campbell's testimony?" The trial judge reviewed fully the testimony of appellant in which appellant denied any wrongdoing, and charged as follows: "It is for you, members of the jury, to say whether you believe Hradesky's account of those events. *Under all the evidence do you believe him [it]?*" Appellant picks out the italicized question from its context and says that it is prejudicial. The trial judge reviewed appellant's testimony further, including that in which he denied completely any conspiracy with Paull concerning assessments, and then submitted the following questions to the jury which appellant quotes in his brief as objectionable: "Can you accept his testimony as a true account of his relations with Paull? Do you believe that Paull was playing a lone hand? Is it conceivable to you that Hradesky did not know what Paull was doing?" When the charge is considered in its entirety, as it must be (*Com. v. Eberhardt*, 164 Pa. Superior Ct. 591, 604, 67 A. 2d 613), it becomes plain that it contained no reversible error as a result of such questions. The questions asked did not take from the jury the factual issue of appellant's guilt or innocence, nor did they amount to an improper expression of opinion by the trial judge.[1]  *Com. v. Maloney*, 365 Pa. 1, 7, 73 A. 2d 707; *Com. v. Kelly*, 134 Pa. Superior Ct. 241, 246, 4

---

[1] The trial judge instructed the jury: "You are the sole judges of the facts, and accordingly, such comments as I may make upon the evidence will be made not to control you in the view you take of it, but only to remind you of its salient points and to aid you in applying the law correctly to the facts as you find them to be. . . . The innocence or guilt of the defendant is for the jury and the jury alone to determine from the evidence."

A. 2d 209. The charge, read as a whole, is entirely fair to appellant, and in no sense does it constitute an argument for his conviction.

It is alleged that the trial judge erred in that portion of his charge in which he stated the law as to the weight to be given appellant's character evidence. Specifically, appellant says that the trial judge failed to make it clear to the jury that evidence of good character was substantive evidence which could of itself work an acquittal, and that the court's charge in this respect was erroneous within the rule laid down in *Com. v. Cate*, 220 Pa. 138, 140, 69 A. 322, and followed in *Com. v. Padden*, 160 Pa. Superior Ct. 269, 274, 50 A. 2d 722. In the present case the trial judge used the language condemned in the *Cate* case, but it is likewise clear that, when the entire portion of the charge upon the subject of the weight to be given the character evidence is considered, it is correct. On this question the present appeal is ruled by *Com. v. Tenbroeck*, 265 Pa. 251, 255, 256, 108 A. 635, 637, where the Supreme Court stated: "A charge is erroneous that naturally leaves with the jury the impression that they should convict if satisfied of the defendant's guilt from the other evidence, notwithstanding that as to good reputation. However, all of the charge upon that subject should be considered and if it clearly and correctly states the rule there is no error, although a single sentence thereof standing alone might be misunderstood by the jury. So considered, there is no just ground in this case for criticism. Where the trial judge, as here, fully and accurately instructs the jury as to the value of good character as a defense, it is not error to add, 'but, where the jury is satisfied beyond a reasonable doubt under all the evidence, that the defendant is guilty, evidence of previous good character is not to overcome the conclusion which follows from that view of the case': Com. v. Webb, 252 Pa. 187, 194; Com. v. Harmon, 199 Pa. 521; Com. v.

Eckerd, 174 Pa. 137, 148. It is only in the absence of other adequate instructions upon the question that such language is condemned: Com. v. Aston (No. 1), 227 Pa. 106, 110; Com. v. Cate, 220 Pa. 138." To the same effect, see *Com. v. Stoner*, 265 Pa. 139, 144, 145, 108 A. 624; *Com. v. Dwyer*, 79 Pa. Superior Ct. 485, 493; *Com. v. Benjamin*, 100 Pa. Superior Ct. 505, 509; *Com. v. McConaghy*, 151 Pa. Superior Ct. 26, 31, 32, 29 A. 2d 348.

Appellant objects to other portions of the charge in which the trial judge defined the duties of appellant as chief assessor, and pointed out that appellant himself had no authority to make valuations or alter assessments, but that his duties were of a supervisory nature and included furnishing information to the Board of Assessment and Revision of Taxes to enable it to add to the assessment roll, or revise assessments. Counsel for appellant goes outside the record in an attempt to show the existence for some months prior to trial of a newspaper campaign which charged appellant with responsibility for a "general laxity in the functions of the Bureau of Assessment and Revision of Taxes." Counsel argues that the court's charge defining appellant's duties in office was, therefore, highly prejudicial to appellant. It was entirely proper for the trial judge to define, as he did, the duties of the office occupied by appellant. No possible prejudice could arise from such definition. Appellant himself testified as to the operation of the office and as to his duties. No reference was made to the extraneous matters relied on by counsel, but the charge was confined to an accurate and impartial presentation of the issues raised at the trial. Although given an opportunity to do so, appellant's counsel made no objection to any portion of the court's charge, and took only a general exception thereto. The charge is free from fundamental error and affords no

basis for a new trial. *Com. v. Lehman,* 166 Pa. Superior Ct. 181, 186, 70 A. 2d 404.

The judgment is affirmed; and it is ordered that the defendant appear in the court below at such time as he may be there called, and that he be by that court committed until he has complied with his sentence or any part of it that had not been performed at the time the appeal was made a supersedeas.