## Commonwealth v. Aurick, Appellant.

Argued April 21, 1941. Before SCHAFFER, C. J., MAXEY, DREW, LINN, STERN and PATTERSON, JJ.

*Thomas D. McBride,* for appellant.

*James W. Tracey, Jr.,* Assistant District Attorney, with him *Charles F. Kelley,* District Attorney, for appellee.

OPINION BY MR. JUSTICE MAXEY, May 12, 1941:

This is an appeal from a judgment and sentence upon a conviction for involuntary manslaughter.

On January 10, 1939, at 6:40 p. m., appellant was operating a Ford automobile in a southerly direction

on Ridge Avenue at or near the intersection of that avenue with Rector Street, which enters Ridge Avenue from the east but which does not continue westward of Ridge Avenue. His automobile struck a young woman named Philomena Wilson while she was crossing Ridge Avenue, killing her instantly. The Commonwealth produced testimony that the defendant's car was being driven at about 60 miles an hour. Defendant was placed on trial on April 26, 1939, and on the following day was found guilty of the charge of involuntary manslaughter and was sentenced to undergo imprisonment in the Philadelphia County Prison for a term of 18 months and to pay a fine of $25.00. Upon appealing to the Superior Court a new trial was granted (see 138 Pa. Superior Ct. 180, 10 A. 2d 22). Defendant was again placed on trial on June 26, 1940, and was found guilty of involuntary manslaughter. The verdict contained a recommendation of mercy. Defendant was then sentenced to undergo imprisonment in the Philadelphia County Prison for a term of one year. Upon appeal to the Superior Court, the judgment was affirmed. An appeal was thereupon allowed to this court.

The first assignment of error is as follows: "The Superior Court erred in overruling appellant's fourth assignment of error. This assignment was as follows: 'The court below erred when in defining the crime of involuntary manslaughter the jury were instructed that it is committed by a lawful act which merely approximates unlawfulness, as follows: "This defendant is charged with involuntary manslaughter, and the definition of involuntary manslaughter, members of the jury, is where it plainly appears that neither death nor great bodily harm was intended, but that the death was caused accidentally by some unlawful act not amounting to a felony, or by the commission of a lawful act, not merely carelessness, but so rash and reckless as to approximate unlawfulness." ' " ]

On this phase of the case the Superior Court said: "As to the second question, appellant recognizes that his complaint of the use of the word 'approximate' in the charge of the court was fully argued on the first appeal to this court, and appellant's contention dismissed. The trial court followed *Commonwealth v. Gill*, 120 Pa. Superior Ct. 22, 182 A. 103, and *Commonwealth v. Matteo*, 130 Pa. Superior Ct. 524, 197 A. 787. Careless, negligent, and reckless conduct is not necessarily an unlawful act, that is, an act forbidden by law, but it may under certain circumstances approximate unlawfulness so that in the mind of the law it amounts to an unlawful act. However, death caused by, or resulting as a consequence of, recklessly driving a motor vehicle is involuntary manslaughter."

The basis of the present appeal is the use of the word "approximate" in the excerpt quoted from the instructions. The verb "approximate" literally means to "come near". Webster's New International Dictionary, 2d ed., defines it as follows: "to advance near". The instruction complained of amounted to this: If the death of the victim named in the indictment was caused by the defendant's commission of an act so rash and reckless as to come near to being unlawful, he could be convicted of involuntary manslaughter. This was error. It fell short of what the Commonwealth charged in the indictment and it lowered the standard of proof legally required of the Commonwealth in order to warrant a conviction of the charge made. When recklessness of conduct causes another's death, it must in order to sustain a charge of involuntary manslaughter amount to *unlawfulness* of conduct. "An unlawful act such as constitutes an element of involuntary manslaughter is a thing which one has no right to do"; quoted in Warren on Homicide, Vol. 1, sec. 86, p. 420, from *State v. Woods* (Del.) 77 Atl. 490. No person is guilty of involuntary manslaughter unless he kills another by acting *unlawfully*. It is immaterial whether the unlawful act which

is an essential of involuntary manslaughter was unlawful in its inception as, e. g., discharging a deadly weapon into a crowded street, or became unlawful after it was begun, as, e. g., driving a car in a public street and so accelerating its speed as to make it naturally tend to cause death or great bodily harm to persons in that street. The first example is of an inherently unlawful act; the second is of an act (driving a car) not unlawful in itself but done without due caution, i. e., in an unlawful manner. In *Com. v. Godshalk*, 76 Pa. Superior Ct. 500, that court, in an opinion by President Judge ORLADY, said at page 503: "Reckless driving upon the highway is not the exercise of reasonable or ordinary care in the use of it, and is a failure to perform a duty imposed by law."

The Act of March 31, 1860, P. L. 382, sec. 79, amended by the Act of April 11, 1929, P. L. 513, sec. 1, 18 PS sec. 2226, provides: "If any person shall be charged with involuntary manslaughter, happening in consequence of an unlawful act, it shall and may be lawful for the district attorney, with the leave of the court, to waive the felony and to proceed against and charge such person with a misdemeanor," etc. In other words, the very essence of the crime of involuntary manslaughter is the death of a human being *"in consequence of an unlawful act"*. The Act of April 28, 1871, P. L. 244, sec. 1, 19 PS sec. 352, provides: "In any indictment for involuntary manslaughter it shall not be necessary to set forth the manner in which or the means by which the death of the deceased was caused, but it shall be sufficient in every indictment for involuntary manslaughter to charge that the defendant did unlawfully kill and slay the deceased."

If the contention of the Commonwealth is correct, it would be sufficient in any indictment for involuntary manslaughter to charge that the defendant did *"almost unlawfully* kill and slay the deceased." The Commonwealth's contention is *not* correct, for he whose acts

merely *approximate* unlawfulness is doing nothing criminal and for *such* acts he is not subject to indictment. To make out a case of involuntary manslaughter, it must be proved that the death of a human being was caused by another's *unlawful act.* It is immaterial whether the unlawfulness of the act is *inherent* in its *very nature and purpose* or arises only from the *manner of performing* an act which *in its inception and aims* is *not* unlawful.

The law nowhere countenances careless, negligent and reckless conduct when that conduct menaces the physical well-being of others. Such conduct is therefore unlawful. It may not be unlawful if it menaces only the well-being of the reckless individual himself. It becomes so when others are brought within its compass. In *Bisson v. Kelly,* 314 Pa. 99, 110, 170 A. 139, this court said: "It is a primary *social* duty of every person to take thought and have a care lest his action result in injuries to others. This social duty *the law* recognizes and enforces, and for any injury resulting from any person's lack of elementary forethought, the law holds that person accountable. A normal human being is held to foresee those injuries which are the consequence of his acts of omission or commission which he, as a reasonable human being, should have foreseen."

What we have said herein is in harmony with what has long been the accepted law as to involuntary manslaughter. Blackstone in his Commentaries, Lewis Ed., Book 4, star page 192, says: "The second branch, or involuntary manslaughter, differs also from homicide excusable by misadventure in this,—that misadventure always happens in consequence of a lawful act, but this species of manslaughter in consequence of an unlawful one. . . . So, where a person does an act lawful in itself, but in an unlawful manner, and without due caution and circumspection, as when a workman flings down a stone or piece of timber into the street and kills a man, this may be either misadventure, man-

slaughter, or murder, according to the circumstances under which the original act was done. If it were a country village where few passengers are, and he calls out to all people to have a care, it is misadventure only; but if it were in London, or other populous town, where people are continually passing, it is manslaughter, though he gives loud warning, and murder if he knows of their passing and gives no warning at all, for then it is malice against all mankind."

In *Com. v. Gable*, 7 S. & R. 422, at 427, this court, in an opinion by Chief Justice TILGHMAN, said: "Involuntary manslaughter is, where it plainly appears that neither death nor any great bodily harm was intended, but death is accidentally caused by some unlawful act, or an act not strictly unlawful in itself, but done in an unlawful manner and without due caution." In *Com. v. Micuso*, 273 Pa. 474, 477, 117 A. 211, this court said: "Death caused by recklessly driving a motor vehicle, or by carelessly discharging a firearm in a populous place, are examples of involuntary manslaughter."

In *Com. v. Mayberry*, 290 Pa. 195, 138 A. 686, this court, speaking through the present Chief Justice, said: "Involuntary manslaughter consists in 'the killing of another without malice and unintentionally, but in doing some unlawful act not amounting to a felony nor naturally tending to cause death or great bodily harm, or in negligently doing some act lawful in itself, or by the negligent omission to perform a legal duty': 29 C. J. [sec. 134] page 1148," and other citations. The next and concluding sentence of this section 134 on page 1148 of C. J. states: "The unlawfulness of the act in connection with which the killing occurs is the element which distinguishes involuntary manslaughter from a killing excusable as by accident or misfortune." 90 American State Reports, p. 572, lays down this principle: "Criminality may be affirmed of a lawful act carelessly done. . . . The negligence must be such a

departure from what would be the conduct of an ordinary prudent or careful man under the same circumstances as to evidence a disregard of human life or an indifference to consequences."

[While the basis of a charge of involuntary manslaughter is the causing of another's death by one's negligent act or negligent omission to act, the proof of negligence that will support that charge must be something more than the slight negligence which will support a civil action for damages based on negligence.] In 26 American Jurisprudence, sec. 210, p. 299, it is well stated: "Aside from the facts that a more culpable degree of negligence is required in order to establish a criminal homicide than is required in a civil action for damages and that contributory negligence is not a defense, criminal responsibility for a negligent homicide is ordinarily to be determined pursuant to the general principles of negligence, the fundamental of which is knowledge, actual or imputed, that the act of the slayer tended to endanger life. The facts must be such that the fatal consequence of the negligent act could reasonably have been foreseen. It must appear that the death was not the result of misadventure, but the natural and probable result of a reckless or culpably negligent act."

In *Com. v. Pierce,* 138 Mass. 165, 52 American Reports 264, Justice HOLMES said: "Knowledge of the dangerous character of a thing is only the equivalent of foresight of the way in which it will act. We admit that, if the thing is generally supposed to be universally harmless, and only a specialist would foresee that in a given case it would do damage, a person who did not foresee it, and who had no warning, would not be held liable for the harm." Michie on Homicide, Vol. 1, page 178, says: "Where the unlawful act which produces death is unintentionally but negligently done, the defendant is guilty of involuntary manslaughter. On a trial for involuntary manslaughter in causing death by

negligence, the issues are whether the death of the deceased was reasonably to be considered as a consequence of that negligence."

On the other hand, the proof of negligence to support a charge of *involuntary manslaughter* need *not* be proof of acts or omissions exhibiting *reckless, wicked and wanton* disregard of the safety of others. *Negligence of that high degree* will support a charge of *murder in the second degree,* as this court recognized in *Commonwealth v. McLaughlin,* 293 Pa. 218. In *Com. v. Mayberry,* 290 Pa. 195, this court, in an opinion by the present Chief Justice, said: "Had the appellant at bar dashed down Highland Avenue and wantonly, recklessly and in disregard of consequences hurled his car against another or into a crowd or over a person on sidewalk or street and death resulted, then, considering the kind of instrumentality that an automobile is, we are not prepared to say that he ought not to face the same consequences that would be meted out to him if he had accomplished death by wantonly and wickedly firing a gun: *People v. Brown,* 53 Cal. App. 664, 200 Pac. 727."

In *Com. v. Beattie,* 93 Pa. Superior Ct. 404, 408, that court said: "If this defendant wantonly, recklessly and in disregard of consequences drove his car into the Zurn car and death resulted, we are not prepared to say that 'a consciousness of peril or probable peril to human life was not to be imputed to defendant,' *(Shorter v. State,* 147 Tenn. 355, 247 S. W. 985) which would establish the element of malice which is requisite in murder."

In 1 East's Pleas of the Crown, 263, is laid down this rule: "A person driving a carriage happens to kill another: If he saw or had timely notice of the mischief likely to ensue, and yet wilfully drove on, it will be murder; for the presumption of malice arises from the doing of a dangerous act intentionally. There is the heart regardless of social duty. If he might have seen the

danger, but did not look before him, it will be manslaughter, for want of due circumspection. But if the accident happened in such a manner that no want of due care could be imputed to the driver, it will be accidental death, and he will be excused."

If the appellant in the instant case ran his car in a manner which was rash and reckless at the time and place in question, he was guilty of an unlawful act, for he was doing something the law forbids. He could not be convicted if the act which had fatal consequences only *approximated* unlawfulness. In criminal trials the proof offered by the Commonwealth must measure up to the charge made in the indictment. Here the charge was that defendant "unlawfully killed" the victim named.

The first assignment of error is sustained. The judgment is reversed and a new trial ordered.