Commonwealth *v.* Russin, Appellant.

Argued April 21, 1952. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS, ARNOLD and GUNTHER, JJ.

*J. Campbell Brandon,* with him *Brandon, Millar & Duffy,* for appellant.

*Clark H. Painter,* District Attorney, for appellee.

OPINION BY RENO, J., July 17, 1952:

Appellant was involved in a fist fight with the deceased Steve Hosack in the latter's apartment and subsequently indicted and convicted of involuntary man-

slaughter. His demurrer to the evidence and motion for dismissal for want of sufficient evidence to sustain the charge were overruled by the trial judge. Motions in arrest of judgment under the Act of June 15, 1951, P. L. 585, 19 P.S. §871, and for a new trial were refused. He was sentenced to pay the costs of prosecution and undergo imprisonment in the county jail for 3 months. This appeal followed.

The only eye witnesses to the altercation were the victim's wife and appellant. Their testimony, although conflicting, together with the rest of the Commonwealth's evidence, clearly indicate deceased suffered a severe and brutal beating at appellant's hands. As we view the case the only question on this appeal is whether the testimony is sufficient to support the verdict.

Appellant previously worked with Steve Hosack at the Armco Steel Company before the latter retired. Hosack and his wife for the last few years were employed as caretakers at the St. John's Orthodox Church. Hosack was 74 years old when he died and in poor physical condition. On the other hand his assailant was a robust man 51 years old weighing 205 pounds.

From the Commonwealth's evidence the jury could have found the following facts: On March 29, 1951, appellant visited the Hosacks in their apartment, and soon left and returned in a short time with some port wine. Mrs. Hosack testified he appeared to have been drinking. Appellant and Steve Hosack each had a glass of port and appellant "entertained" the Hosacks with his singing. When he poured Steve a second drink Mrs. Hosack protested whereupon appellant grabbed the husband, threw him to the floor, kicked him and dragged him from the kitchen to the living room while continuing to beat him about the face. When Mrs. Hosack attempted to push appellant away he grabbed her by the arms and threw her on the couch. Appellant

threatened to kill Steve if he didn't get up and then picked him up and threw him on the couch. Several neighbors in the apartment house testified they heard the singing and commotion as well as appellant's threats to kill. Upon going to the Hosack apartment they saw deceased on the couch, in a semi-conscious condition, with his face swollen and bloody. Appellant, his face red with anger and his shirt off, was standing over Steve, and as he turned on the neighbors, Mrs. Hosack managed to get him out of their apartment and locked the door. Appellant then banged on the door and renewed his threats to kill Hosack.

Father Koscisko, priest at St. John's Church, had been summoned by the neighbors and when he arrived appellant, believing he was a police officer, although in cleric dress, refused to allow him to enter. Subsequently appellant's wife and son-in-law arrived with the police and he was taken home.

Dr. C. Y. Veenis, also called by the neighbors, testified he arrived about 5 o'clock and found Steve Hosack lying on the floor beside the couch with a bruised and bleeding mouth, and blood coming from the nostrils. He had a deep laceration of the upper lip, a smaller laceration on the cheek and a small abrasion on the face. The doctor put three sutures in his lip and gave him a sedative. The following day he was recalled and found his patient still on the couch with a high fever and evidencing symptoms of pneumonia. Hosack was rushed to the hospital but died early the next morning or approximately 32 hours after the assault. The cause of death was certified as bronchial pnuemonia.

Appellant's version of the altercation is quite different. He contends he brought two bottles of wine back to the apartment after Mrs. Hosack had told him she and her husband had been sick for two weeks with

bad colds. He testified he and Steve finished one bottle and had started on the second when Mrs. Hosack tried to pour the contents down the drain. When appellant attempted to stop her Steve came from behind him and hit him on the forehead and they both fell on the floor. Appellant insisted he hit Hosack only once and then only to prevent Steve from choking him. However, in his sworn statement made to the police the same day appellant admitted hitting Hosack several blows in the mouth. Appellant argues that the deceased was permitted to remain overnight on the couch only partially clad and in his weakened condition, resulting from the flu, he contracted the pneumonia from which he died and it was the prior disease and not the blow that caused his death. This is the real crux of the appeal.

Involuntary manslaughter has been defined as "the killing of another without malice and unintentionally, but in doing some unlawful act not amounting to a felony nor naturally tending to cause death or great bodily harm, or in negligently doing some act lawful in itself, or by the negligent omission to perform a legal duty." *Com. v. Mayberry*, 290 Pa. 195, 198, 138 A. 686; *Com. v. Aurick*, 342 Pa. 282, 19 A. 2d 920; *Com. v. Carnes*, 165 Pa. Superior Ct. 53, 67 A. 2d 675. The essence of the crime is the death of a human being "happening in consequence of an unlawful act." The Penal Code of June 24, 1939, P. L. 872, §703, 18 P.S. §4703, *Com. v. Dellcese*, 155 Pa. Superior Ct. 120, 38 A. 2d 494; *Com. v. Holman*, 160 Pa. Superior Ct. 211, 50 A. 2d 720.

Here the assault and battery upon the deceased was the unlawful act. The Penal Code, supra, §708, 18 P.S. §4708. Considered in the light of the medical testimony, appellant's assault was the efficient producing cause of the death. *Com. v. Amecca*, 160 Pa. Superior Ct. 257, 50 A. 2d 725. Dr. Stephen Miller, a patholo-

gist, testified he made an autopsy of the deceased to determine the cause of death, and found the following marks of violence: swollen nose, laceration of left upper lip 1¼ inches in length; laceration on the under surface of tongue ¼ inch deep where a tooth had been driven through the floor of the tongue; and a shallow bruise on the right side of the jaw. He found fresh blood in the nose and back of the throat and clotted blood inside the mouth. The deceased also suffered from hardening of the arteries of the brain and sclerosis of the liver. The doctor gave bronchial pneumonia as cause of death but explained that pneumonia is produced by a foreign substance in the lungs, such as blood, and that decedent had an extensive quantity of blood in his lungs which the doctor concluded came from the laceration in the lip and mouth. The doctor testified "the cause of death in this patient is primarily due to the severe degree of pneumonia present in this patient. And that pneumonia possibly is of the aspirated type, meaning due to the presence of blood and the mucus being inhaled into the lungs. The injuries presented, in a young individual, would not have been of any serious moment. However, in an elderly diabetical man, associated with the concussion of the brain, they were of sufficient degree to bring about secondary infection pneumonia and death" and this pneumonia was produced, "as a result of the injury."

With this evidence before the jury the trial judge cannot be said to have abused his discretion in refusing a new trial. The unlawful beating was more than a remote episode in a sequence of events culminating in a fatality, as argued by appellant, and the jury could properly find, from the testimony, a direct relationship or causal connection between appellant's unlawful acts and the death of Steve Hosack. There was ample evidence to sustain the verdict.

The judgment and sentence are affirmed; and it is ordered that the defendant appear in the court below at such time as he may be there called and that he be committed by that court until he has complied with the sentence, or such part thereof as had not been performed when the appeal was made a supersedeas.