Commonwealth *v.* Piper, Appellant.

Argued November 13, 1956. Before RHODES, P. J., HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and CARR, JJ.

*J. E. Birsic,* with him *Eugene F. Scanlon* and *Cauley & Birsic,* for appellant.

*William Claney Smith,* Assistant District Attorney, with him *Samuel Strauss,* Assistant District Attorney, and *Edward C. Boyle,* District Attorney, for appellee.

OPINION BY WOODSIDE, J., March 20, 1957:

Charles E. Piper was convicted by a jury of involuntary manslaughter, a charge which grew out of an automobile collision between his vehicle being driven by Mrs. Dorothy Powell, and another vehicle in which the deceased was a passenger. He has appealed from the judgment of sentence imposed after the court below dismissed his motions for a new trial and in arrest of judgment.

Both the defendant and Mrs. Powell were indicted, and the two cases were listed for trial together, but after the jury was drawn and prior to its being sworn, Mrs. Powell entered a plea of guilty. The trial then proceeded against defendant Piper with Mrs. Powell testifying as a Commonwealth witness.

It is the contention of the defendant that the Commonwealth did not prove (1) that he had "committed an unlawful act which would naturally and probably result in death or great bodily harm," and (2) "that the unlawful act was the proximate cause of the resultant death."

From the Commonwealth's evidence the jury could have found the following facts:

On December 28, 1955, at approximately 6 P.M., while Mrs. Powell was in a beer garden on Third Avenue in the city of McKeesport, she met Piper, who bought her a glass of beer. She then left and went to another beer garden in McKeesport, where the defendant again met her. There they spent approximately an hour, Mrs. Powell drinking beer and Piper drinking beer and whiskey. From there Piper took Mrs. Powell in his car and went to a tavern in Pittsburgh, at the corner of Forbes and Brady Streets. After spending some time in that tavern, they left together and went to Piper's car for the purpose of driving to some other tavern. Piper was staggering. When they got to his car, he told Mrs. Powell to drive it. She told him that she had never driven a car and did not know how to drive, and did not have an operator's license. She, nevertheless, got into the car behind the wheel, and Piper sat in the front seat next to her. He put the key in the ignition, started the engine, and told her how to drive the car.

Mrs. Powell then, for the first time in her life, drove an automobile. It was at night, in city traffic, and

the only other occupant of the car (the appellant) was intoxicated. She had driven only a few blocks when, on Fifth Avenue, she lost control of the car, which collided head-on with another car approaching in the opposite direction. She testified, "I lost control of the car . . . I guess it slid on the street car tracks." A passenger in the car with which the defendant's car collided was killed.

Defendant Piper testified that he had started drinking in the morning of December 28, 1955, and that he met Mrs. Powell at approximately 6 P.M. in a beer parlor in McKeesport. He testified that he drank liquor and beer in three beer parlors, and that at the tavern at Forbes and Brady Streets he became ill, went out to his car, seated himself in it, and "passed out". He says he knew nothing further until he recovered his senses while being placed on a stretcher to be taken to the hospital after the collision.

The Penal Code of June 24, 1939, P. L. 872 §703, 18 PS §4703 provides, inter alia, "Whoever is convicted of involuntary manslaughter, happening in consequence of an unlawful act, or the doing of a lawful act in an unlawful way, is guilty of a misdemeanor . . ."

Involuntary manslaughter "consists in 'the killing of another without malice and unintentionally, but in doing some unlawful act not amounting to a felony nor naturally tending to cause death or great bodily harm, or in negligently doing some act lawful in itself, or by the negligent omission to perform a legal duty.'" *Commonwealth v. Mayberry*, 290 Pa. 195, 198, 138 A. 686 (1927); *Commonwealth v. Aurick*, 342 Pa. 282, 19 A. 2d 920 (1941); *Commonwealth v. Russin*, 171 Pa. Superior Ct. 268, 271, 90 A. 2d 395 (1952).

The Motor Vehicle Code provides: "No person . . . shall operate any motor vehicle or tractor upon a high-

way in this Commonwealth, unless such person has been licensed as an operator or a learner by the department under the provisions of this act." Act of May 1, 1929, P. L. 905, §601, as amended, 75 PS §161..

It further provides: "No person shall authorize or permit a motor vehicle or tractor owned by him, or under his control, to be operated by any person who has no legal right to do so, or in violation of any of the provisions of this act." Act of May 1, 1929, supra, §622, as amended, 75 PS §233.

Operating an automobile without an operator's license, or permitting another without such license to operate one's automobile, does not alone make the parties guilty of involuntary manslaughter if the car is involved in a fatal accident. The unlawful act must be something more than a remote unit in a sequence of events culminating in a fatality, or an attendant condition without which the death could not have occurred; the death must be the natural result or probable consequence of the unlawful act. If the appellant was blameless except for the violation of Section 622 of the Motor Vehicle Code, supra, he was not guilty of involuntary manslaughter. *Commonwealth v. Williams,* 133 Pa. Superior Ct. 104, 108, 110, 112, 1 A. 2d 812 (1938); *Commonwealth v. Aurick,* 138 Pa. Superior Ct. 180, 10 A. 2d 22 (1939).

But appellant was not blameless except for violating the above provision. Unlike the operator in the *Williams* case, Mrs. Powell had never driven an automobile before. The appellant not only permitted, but urged, this inexperienced person to drive in city traffic, on a street with street railway tracks, and at night. She was urged to drive when the only licensed operator in the automobile with her was intoxicated and she had been drinking. Under these circumstances, she could not have been expected to drive the automobile with-

out having a serious accident. Death, indeed, was the natural result *and* the probable consequence of the appellant's conduct in permitting the unlicensed operator to drive under such circumstances.

As the Supreme Court of Michigan said in an opinion dealing with a similar factual situation, *People v. Ingersoll,* 245 Mich. 530, 535, 222 N.W. 765 (1929): "Defendant's automobile did not come down the highway and crash into the other car without human agency. It was a reckless disregard of consequences for defendant to permit the inexperienced girl to drive at all and especially all night, and the very event that happened was one reasonably to be expected, or at least one to have been guarded against, by not affording means for its accomplishment."

We have no doubt that the evidence in this case is sufficient to sustain this conviction.

The judgment of sentence is affirmed, and it is ordered that appellant appear in the court below at such time as he may there be called, and that he be by that court committed until he has complied with his sentence or any part of it which had not been performed at the time the appeal was made a supersedeas.