Commonwealth *v.* Root, Appellant.

Argued September 18, 1959. Before GUNTHER, WOODSIDE, ERVIN, and WATKINS, JJ. (RHODES, P. J., and HIRT and WRIGHT, JJ., absent).

*Franklin L. Gordon,* with him *Gordon & Gordon,* for appellant.

*Alfred Delduco,* Assistant District Attorney, with him *John E. Stively,* District Attorney, for appellee.

OPINION BY WOODSIDE, J., December 17, 1959:

This is an appeal from the judgment of sentence imposed upon the defendant after his conviction by a jury on the charge of involuntary manslaughter. He contends here, as in the court below, that judgment should be arrested, or in lieu thereof, a new trial should be granted.

Except for relatively unimportant details there is no serious conflict in the evidence. The jury would be justified in finding the following facts: After 1 o'clock in the morning of May 25, 1957, Leroy W. Root, the defendant, Lewis Hall, who was killed in an automobile accident later that morning, and several of their fellow employes at the Downingtown Paper Box Company, congregated at the "Ranch," near the western border of Downingtown. There they drank intoxicants. In a statement made to the police, the defendant admitted having eight or ten glasses of beer. They were all "feeling pretty good."

At approximately 3 o'clock in the morning, Root with two friends left the Ranch in his car and headed west on Route 30. At the same time, Hall left in his car in the same direction. As they were leaving, Hall suggested to the defendant that they race to Coatesville. Root rejected the idea, and followed Hall slowly through the nearby village of Thorndale. Hall then waved to the defendant to pass him. Thereupon, the defendant passed Hall, and they both "took off." They raced for several miles at a speed estimated at from 70 to 90 miles an hour. The defendant, himself, indicated his speed exceeded 90 miles per hour. Hall followed close behind the defendant.

Route 30 is a three lane road between Downingtown and Coatesville, and is probably the most heavily travelled east-west state highway in the Commonwealth. There is evidence that at least three trucks

and another car were on the highway within the immediate area while the cars were racing.

As the speeding cars passed the entrance to the Veterans Administration Hospital east of Coatesville, where the road is lined into two lanes, the defendant was on his side of the highway ahead of Hall. They had just passed a truck going in the same direction. Whether Hall was directly back of the defendant and pulled out in an effort to pass, or whether he was at the defendant's side with his front wheels even with the defendant's back wheels, is not clear. The defendant indicated in his statement to the police that as the speeding cars approached the bridge over the railroad, he "dropped off" his speed to 90 miles an hour. Hall never passed the defendant, but in an effort to do so, ran head-on into a truck in the eastbound lane, being properly operated in the opposite direction. Hall's car struck the truck with such force that the car's engine was torn from the automobile and thrown over 30 feet from it. Hall was dead when taken from the wreckage.

The truck "jack-knifed" across the westbound lane, but the defendant's car, which was slightly ahead of the deceased's car at the moment of collision, passed the truck without contacting either it or the deceased's car. The defendant did not stop. He took a circular route to return to the scene of the accident so that he would approach it from the east, but seeing an officer diverting traffic, he did not approach the scene. He drove close enough to see that the wrecked car was Hall's, but he did not learn of Hall's fate that night.

Several days later the defendant was taken into custody by the police, to whom he gave a statement substantially admitting the above facts.

After the jury found him guilty he made motions in arrest of judgment and for a new trial. The court be-

low refused both motions and sentenced him to pay a fine of $500 and serve nine months in jail. He thereupon appealed to this Court.

Section 703 of the Act of June 24, 1939, P. L. 872, 18 PS §4703, provides, "Whoever is convicted of involuntary manslaughter, happening in consequence of an unlawful act, or the doing of a lawful act in an unlawful way, is guilty of a misdemeanor . . ." The statute attempts to partially, but not fully, define the misdemeanor.

The generally accepted definition of involuntary manslaughter used by the Appellate Courts in Pennsylvania is as follows: "Involuntary manslaughter consists in the killing of another without malice and unintentionally, but in doing some unlawful act not amounting to a felony nor naturally tending to cause death or great bodily harm, or in negligently doing some act lawful in itself, or by the negligent omission to perform a legal duty."[1]  *Commonwealth v. Comber,*

---

[1] This definition was originally taken from 29 C.J. §134, page 1148. In 40 C.J.S., Homicide, §55, page 918, the definition of involuntary manslaughter has been changed to read: "Involuntary manslaughter is the unintentional killing of another without malice in doing some unlawful act not amounting to a felony or tending to cause great harm, or in doing a lawful act negligently, or by negligently omitting to perform a legal duty."

It has been held in Pennsylvania that the negligence which will support a civil verdict is not sufficient to sustain a verdict of involuntary manslaughter unless the negligence includes an element of rash or reckless conduct. Therefore, it might be advisable to substitute "recklessly" for "negligently" in these definitions. As the definition of manslaughter is not directly involved in this case, we merely note these matters, and are making no effort in this case to revise or improve the definition of involuntary manslaughter, accepted and used in numerous cases. See *Commonwealth v. Gill,* 120 Pa. Superior Ct. 22, 27, 35, 36, 182 A. 103 (1935) ; *Commonwealth v. Dellcese,* 155 Pa. Superior Ct. 120, 124, 125, 38 A. 2d 494 (1944) ; *Commonwealth v. Aurick,* 342 Pa. 282, 287, 19 A. 2d 920 (1941).

374 Pa. 570, 580, 97 A. 2d 343 (1953); *Commonwealth v. Mayberry,* 290 Pa. 195, 198, 138 A. 686 (1927); *Commonwealth v. Piper,* 183 Pa. Superior Ct. 229, 232, 130 A. 2d 195 (1957).

Hall was killed while the defendant was racing him in a motor vehicle on a public highway. The defendant was doing an unlawful act by participating in a race or speed contest with a motor vehicle on a highway. He was guilty of the statutory offense of reckless driving. Act of May 1, 1929, P. L. 905, §1001(c), as amended, 75 PS §481.

Even if there were no statute making his conduct unlawful, it would, nevertheless, have been unlawful. Conduct so careless, negligent and reckless that it menaces the physical well being of others is unlawful. *Commonwealth v. Aurick,* 342 Pa. 282, 287, 19 A. 2d 920 (1941).[2]

The trial judge properly defined the offense of involuntary manslaughter, and submitted to the jury two questions: Was the conduct of the defendant a violation of the statute and, therefore, unlawful, and if so, was the unlawful conduct of the defendant the legal cause of Hall's death?

The evidence leaves no doubt that the defendant and Hall were racing with their motor vehicles on a highway in violation of the law. The defendant's conduct was unlawful.

It is reasonable to conclude that Hall's death was caused by the race. The race was made possible by the act of the defendant. The reckless speed of the deceased and his presence on the wrong side of the high-

---

[2] In charging the jury on this point care must be taken by trial courts not to say that the defendant can be found guilty if his acts "approximate" unlawful conduct. We note this only because many cases prior to *Commonwealth v. Aurick,* supra, used the inappropriate word, and the digests continue to use it.

way where he struck the truck were the result of the racing of the defendant and the deceased. The defendant's unlawful act was a substantial factor in bringing about the death.

The defendant contends that he cannot be held criminally responsible for Hall's death because the deceased's own negligence was a substantial factor in bringing about his death. There is no doubt that the deceased was reckless, and that his recklessness contributed to his death. But, the negligence or recklessness of the deceased is not the issue here. If a man's negligence contributes to his injury or death, he, or those claiming under him, cannot recover damages in a civil action. It has long been the policy of the common law that one who fails to look out for his own safety is not entitled to demand in court that he be compensated for the consequences of his failure.

But this is a criminal action. The Commonwealth is interested in protecting its citizens against acts which endanger their lives. The policy of the law is to protect human life, even the life of a person who wishes to destroy his own. To prove that the victim wanted to die would be no defense to murder. Neither is it a defense to involuntary manslaughter to prove that the victim was himself guilty of negligent or reckless conduct which contributed to his own death. It is the *defendant* who is on trial for *his* conduct. The *victim's* negligence is not an issue here. *Commonwealth v. Rosenberger*, 183 Pa. Superior Ct. 401, 406, 132 A. 2d 359 (1957).

The Commonwealth must connect the unlawful act of the defendant with the death of the victim. This takes us into the field of causation, one of the most confused and difficult in the area of jurisprudence. The endless search to find an understandable formula which could be universally applied continues without

success. The terms used in the field of causation—proximate cause, legal cause, substantial factor, in consequence of, natural and probable consequence, and others—are not completely adequate; nor do the definitions and amplifications of these terms furnish us with an infallible guide. A discussion of proximate cause necessarily involves imponderables, and does not produce solutions of irrefutable mathematical perfection. *Coyne v. Pittsburgh Rwys. Co.,* 393 Pa. 326, 334, 335, 141 A. 2d 830 (1958).

Judge WRIGHT, speaking for this Court, has stated the rule of causation applicable here in the following language: ". . . a person is not guilty of involuntary manslaughter unless his unlawful and reckless conduct was the legal cause of the injury and death, and legal cause means conduct which is a substantial factor in bringing about the harm." *Commonwealth v. Levin,* 184 Pa. Superior Ct. 436, 439, 135 A. 2d 764 (1957). "Legal" cause and "proximate" cause are used interchangeably to express the same concept.[3] See *Commonwealth v. Rosenberger,* supra, 183 Pa. Superior Ct. 401, 406, 132 A. 2d 359 (1957).

The concept of proximate cause as applied in tort cases is applicable to similar problems of causation in criminal cases. *Commonwealth v. Almeida,* 362 Pa. 596, 603, 611, 68 A. 2d 595 (1949).

Unless the criminal conduct of the defendant was a proximate cause of Hall's death, the defendant is not guilty of involuntary manslaughter. Before we can determine whether the defendant's unlawful act was a proximate cause of Hall's death we must consider what is meant by proximate cause.

---

[3] Many believe "legal cause" more accurately expresses the desired concept than "proximate cause". We have used proximate cause here because it is the term used most frequently in the numerous cases which we cite and from which we quote.

First, we must remember that proximate cause and recklessness are separate and distinct elements of the crime. A defendant's conduct may be reckless and not a proximate cause of the death, or his conduct may be a proximate cause of the death and not be reckless. The two are separate and distinct elements of the crime, related only because both must be present to justify conviction, and because both are frequently ascertainable from the same facts.

Next we must remember that there can be more than one proximate cause of an injury or death. See *Commonwealth v. Gill*, 120 Pa. Superior Ct. 22, 182 A. 103 (1935), where the drivers of two automobiles involved in collisions were both convicted of involuntary manslaughter. See also *Commonwealth v. Almeida*, supra, 362 Pa. 596, 68 A. 2d 595 (1949) ; *Commonwealth v. Russin*, 171 Pa. Superior Ct. 268, 90 A. 2d 395 (1952) ; *State v. Newberg* (Or. 1929), 278 P. 568, 63 A.L.R. 1225, 1231; *People v. Lewis* (Cal. 1899), 57 P. 470.

Numerous civil cases have held that there can be more than one proximate cause of an injury and that two or more persons can commit separate negligent acts *each* of which is *a* proximate cause of one injury. *Hitchins v. Wilson*, 68 Pa. Superior Ct. 366, 370 (1917) ; *Boggs v. Jewell Tea Co.*, 266 Pa. 428, 433, 109 A. 666 (1920) ; *Mellon v. Lehigh Valley R. R. Co.*, 282 Pa. 39, 44, 127 A. 444 (1925) ; *Dannenhower v. Western Union Teleg. Co.*, 218 Pa. 216, 67 A. 207 (1907) ; *Stark v. Rowley*, 323 Pa. 522, 526, 187 A. 509 (1936) ; *Potere v. Philadelphia*, 380 Pa. 581, 588, 112 A. 2d 100 (1955) ; *Carlson v. A. & P. Corrugated Box Corp.*, 364 Pa. 216, 223, 72 A. 2d 290 (1950) ; *Com. to use v. U. S. F. & G. Co.*, 364 Pa. 543, 73 A. 2d 422 (1950).

Dean William L. Prosser[4] recently wrote: "It fol-

---

[4] 38 Cal. Law Review, 379. Dean Prosser, of the University of California School of Law, is considered by many to be the outstanding living authority on this subject.

lows that there are always many such substantial factors contributing to an injury. Nothing occurs in a vacuum, and the event without multiple causes is inconceivable. Existing conditions, the forces of nature, the prior acts and omissions of others, and all other surrounding circumstances invariably play their important part. From time to time the California courts have gone seeking 'the sole proximate cause' of an accident. There is, as the same courts have been forced to recognize often enough, no such thing. Neither is there any such thing as 'the proximate cause' of an event, distinguished as a cause from all other causes. In particular, the defendant never can be absolved from liability for the mere reason that the negligence of another has contributed to the result."

In an effort to determine whether an act is a proximate cause the courts in this Commonwealth have applied various tests.

In *Hoag v. Lake Shore & Mich. South. R. R. Co.,* 85 Pa. 293, 298 (1877), Mr. Justice PAXSON, said: "In determining what is proximate cause, the true rule is, that the injury must be the natural and probable consequence of the negligence—such a consequence as, under the surrounding circumstances of the case, might and ought to have been foreseen by the wrongdoer as likely to flow from his act." See also *Grebe v. Kligerman,* 310 Pa. 60, 66, 164 A. 796 (1933).

In *Mellon v. Lehigh Valley R. R. Co.,* supra, 282 Pa. 39, 44, 127 A. 444 (1925), the railroad company was held liable to a pedestrian for injuries suffered when the company's train knocked a taxicab into a post which fell on the plaintiff. The Court concluded that the injury was the natural and probable consequences of the railroad's act, such as might and should have been foreseen as likely to result therefrom.

In *Dannenhower v. Western Union Teleg. Co.,* supra, 218 Pa. 216, 219, 67 A. 207 (1907), the Court said:

"A negligent act may be the proximate cause of an injury although not the sole or immediate cause where the intervening act is set in motion or induced by the negligent act and the consequence is one that should have been foreseen."

In *Commonwealth v. Russin,* supra, 171 Pa. Superior Ct. 268, 272, 90 A. 2d 395 (1952), the appellant contended he was improperly convicted of involuntary manslaughter because the deceased died of flu and pneumonia following a beating by the appellant. The Court said: "The unlawful beating was more than a remote episode in a sequence of events culminating in a fatality, as argued by the appellant, and the jury could properly find, from the testimony, a direct relationship or causal connection between appellant's unlawful acts and the death . . ." p. 272. They also referred to the defendant's assault as "the efficient producing cause of the death." p. 271.

In *Coyne v. Pittsburgh Rwys. Co.,* supra, 393 Pa. 326, 335, 336, 141 A. 2d 830 (1958), the Court quoted from *Hughes v. Pittsburgh Transp. Co.,* 300 Pa. 55, 60, 150 A. 153 (1930) as follows: "Where there would have been no injury whatever but for the continuing negligence of the defendant who first put the plaintiff in peril, and which existed when the negligence of the other turned the peril into actual injury, the negligences are concurrent and both defendants are jointly and severally liable for the injuries thereby occasioned."

A negligent or unlawful act is not a proximate cause if it contributes only a slight degree to the injury. *Crane v. Neal,* 389 Pa. 329, 132 A. 2d 675 (1957); *Middleton v. Glenn,* 393 Pa. 360, 363, 143 A. 2d 14 (1958). The unlawful act must be more than a remote unit in a sequence of events culminating in a fatality or an attendant circumstance without which the death could not have occurred, such as the operat-

ing of an automobile without a license. *Commonwealth v. Piper,* 183 Pa. Superior Ct. 229, 233, 130 A. 2d 195 (1957) ; *Commonwealth v. Williams,* 133 Pa. Superior Ct. 104, 108, 110, 112, 1 A. 2d 812 (1938).

If the death is the natural result or probable consequence of an unlawful act of the defendant, he is guilty. *Commonwealth v. Piper,* supra; *Commonwealth v. Williams,* supra.

Proximate cause cannot be reduced to absolute rules. We must rely upon a few general guides, such as those contained in the above cases. It has been said, "It is always to be determined on the facts of each case upon mixed considerations of logic, common sense, justice, policy and precedent . . . The best use that can be made of the authorities on proximate cause is merely to furnish illustrations of situations which judicious men upon careful consideration have adjudged to be on one side of the line or the other." Street, Foundations of Legal Liability, 1906, 110.

The defendant is not excused from liability because there was no physical contact between his car and the deceased's car. *Commonwealth v. Levin,* supra, 184 Pa. Superior Ct. 436, 135 A. 2d 764 (1957) ; *Community Fire Co. v. Pa. P. & L. Co.,* 92 Pa. Superior Ct. 304 (1928).

Nor is the defendant excused from liability because the victim was also violating the law, or was an accomplice in the race. *Commonwealth v. Bolish,* 391 Pa. 550, 553, 138 A. 2d 447 (1958), and 381 Pa. 500, 521, 113 A. 2d 464 (1955).

In *State v. Fair,* 209 S. C. 439, 40 S.E. 2d 634 (1946), the evidence was held sufficient to support a conviction of involuntary manslaughter where the defendant and the driver of another car were racing, and the defendant's car was not otherwise involved in a collision resulting in the death of several people, including the operator of the one racing vehicle. The

court there adopted the theory that the act of the defendant and the deceased in violating the law by racing was, in legal contemplation, the act of both.

The question whether the unlawful conduct of a defendant is a proximate cause of the death is almost always one of fact for the jury. *Stark v. Lehigh Foundries, Inc.*, 388 Pa. 1, 11, 130 A. 2d 123 (1957). It is only when there is no room for a reasonable difference of opinion as to the facts and the inferences to be drawn therefrom that the question becomes one of law. *Helmick v. South Union Twp.*, 323 Pa. 433, 439, 185 A. 609 (1936) ; *Community Fire Co. v. Pa. P. & L. Co.*, supra, 92 Pa. Superior Ct. 304, 307 (1928) ; *Klimczak v. 7-Up Bottling Co. of Phila.*, 385 Pa. 287, 293, 122 A. 2d 707 (1956).

The jury found that the defendant's unlawful act of racing was a proximate cause of Hall's death. The evidence supported the finding. The unlawful act of the defendant in racing with the deceased continued up to the moment of collision. Applying the tests set forth in the above cases to the evidence of this case justifies the jury's verdict. There is no merit in the defendant's motion in arrest of judgment.

Nor is there any merit in the defendant's motion for a new trial. President Judge HARVEY, who since trying this case has resigned after serving over 20 years as a judge, ably and adequately charged the jury concerning proximate cause. At least five times he told the jurors that in order to convict the defendant they had to be convinced beyond a reasonable doubt, not only that the defendant committed an unlawful act, but also that the unlawful act was a substantial factor in bringing about the death of Hall. At least ten times he told the jury in substance that it could not convict unless the death was the natural and probable consequence of the defendant's unlawful act.

In *Commonwealth v. Levin,* supra, 184 Pa. Superior Ct. 436, 439, 135 A. 2d 764 (1957), we said: "A person is not guilty of involuntary manslaughter unless his unlawful and reckless conduct was the legal cause of the injury and death, and legal cause means conduct which is a substantial factor in bringing about the harm."

Dean Prosser said in the article from which we quoted above, "The [substantial factor] formula has rather obvious advantages. The phrase is sufficiently intelligible to any layman to furnish an adequate guide to the jury, and it is neither possible nor desirable to reduce it to lower terms . . ."

Both the Supreme Court and this Court have said many times in referring to proximate cause that the injury must be the natural and probable consequence of the negligence. See cases cited above.

The appellant contends that the following part of the charge was error: ". . . Hall was as guilty, responsible for those consequences as the defendant, and the fact that Hall, the deceased, was guilty and responsible for the consequences of that act of racing does not excuse the defendant from his criminal responsibility for that act of racing. And we say further in view of the argument of counsel, as we understand the law and as we are giving it to you in this case, negligence or want of care of the victim of this racing and participating in that criminal offense of racing, that is negligence or want of care on the part of Lewis Hall, is no defense to the criminal responsibility of the defendant for the natural and probable consequences of his act of racing."

The trial judge correctly stated the law. As we set forth above, Hall was reckless, but his recklessness is no defense to the criminal responsibility of the defendant for the natural and probable consequences of

*his* recklessness. No specific exception was taken to this part of the charge, and even if it were not an accurate statement of the law, it would not be a ground for a new trial unless the error was basic and fundamental.

The appellant contends that the trial judge should have charged that the negligence of the deceased would be a defense if the deceased's own negligence was a substantial factor (legal cause) in bringing about his own harm, injury and death. The appellant is not without authority for his position. This Court said in *Commonwealth v. Amecca*, 160 Pa. Superior Ct. 257, 262, 50 A. 2d 725 (1947), that in cases of this kind "the jury should be instructed that the negligence of the deceased is no defense *unless* the deceased's own negligence was a substantial factor (legal cause) in bringing about his own harm, injury and death." The opinion in the *Amecca* case assumed throughout that there could be only one legal or proximate cause of a death. It noted that the only question was whether the deceased's negligence *or* the defendant's negligence was *the* legal or proximate cause of the death. It ignored the fact, so well established in logic and law, that the negligence of *both* could have been proximate causes of the death. As we have demonstrated above, it is error to conclude that there can be only one proximate or legal cause of an injury or death. The error of this case should not be perpetuated. The case is overruled.

There is another reason why the charge suggested in the *Amecca* case should not be followed. It confuses the element of negligence or recklessness with the element of proximate cause. It suggests that sometimes the negligence of the deceased is a defense and sometimes it is not a defense. The negligence of the deceased is never a defense; it is the fact that the un-

lawful act of the defendant is not a proximate cause of the death which is the defense to which the court is referring.

Even were we to accept the *erroneous* conclusion that there can be only one proximate cause of a death, the charge would still be inaccurate in stating that the *negligence* of the deceased is a defense. The defense would not be the negligence, but that the *conduct or act* of the deceased—whether it was negligent, reckless, intentional, unlawful or lawful—was *the* proximate cause of the death and, assuming there could be only one proximate cause, the unlawful act of the defendant could not be *the* proximate cause.

In determining whether the unlawful act of the defendant is a proximate cause of the death, the jury must consider *all* the circumstances,—the conduct of the defendant, the conduct of the deceased, the conduct of the operator of the truck, the condition of the highway, the time of the day and numerous other facts. The trial judge could properly charge that the conduct of all parties involved, including the deceased, and all conditions which might contribute to the death, must be considered in determining whether the unlawful act of the defendant was a proximate cause of the death. See *Commonwealth v. Aurick*, 138 Pa. Superior Ct. 180, 187, 10 A. 2d 22 (1939), and *Commonwealth v. Hatch*, 149 Pa. Superior Ct. 289, 27 A. 2d 742 (1942). But to suggest that the defendant's negligence sometimes is a defense and sometimes is not, or that there can be only one proximate cause, or that the jury must delve into the collateral issues of what acts, other than those of the defendant, might have contributed to the death, would confuse rather than clarify the issue.

The conduct of the deceased is only one of many factors which must be considered in determining whether the defendant's unlawful act was a proximate

cause of death, and it is not basic error to fail to pinpoint that one factor in the charge.

The defendant had a fair trial. Reading the record leads us to the conclusion that if there were any errors in the conduct of this trial, the defendant, and not the Commonwealth, benefited therefrom.

Judgment of sentence affirmed, and it is ordered that appellant appear in the court below at such time as he may be there called, and that he be by that court committed until he has complied with his sentence or any part thereof which had not been performed at the time the order of supersedeas was entered.