## Commonwealth v. Luczak

*John T. Robinson, district attorney,* for Commonwealth.

*Peter T. Campana,* for defendant.

WOELFEL, *J.,* October 25, 1995—Defendant has filed the instant omnibus pretrial motion in which he

requests dismissal of the charge against him. In the alternative, the defendant requests the suppression of statements which he made prior to and after his arrest. For the reasons set forth herein, defendant's omnibus pretrial motion will be denied.

Defendant has moved to dismiss the charge of violating 18 Pa.C.S. §2505(b), aiding or soliciting a suicide, asserting that the statute is unconstitutionally vague. The defendant further asserts the existence of an individual's right to die, and as a corollary of that asserted right, the right to commit suicide and the right to be assisted in doing so. Defendant's constitutional challenges are without merit.

Defendant claims that "all citizens of this Commonwealth have a right to die and a right to commit suicide including the right to receive the assistance of others in doing so." Defendant does not cite any Pennsylvania case law to support this assertion, but states that the court may conclude that such a right exists based upon the language set forth in Article I, Sections 1 and 3 of the Pennsylvania Constitution.[1]

In *Cruzan v. Director, Missouri Department of Health,* 497 U.S. 261, 110 S.Ct. 2841, 111 L.Ed.2d 224 (1990), the United States Supreme Court was "squarely presented with the issue whether the United States Constitution grants what is in common parlance referred to as a 'right to die.' " While the Supreme Court declined

---

1. Article I, Section 1 provides: "All men are born equally free and independent, and have certain inherent and indefeasible rights, among which are those enjoying and defending life and liberty, of acquiring, possessing and protecting property and reputation, and of pursuing their own happiness." Section 3 states in pertinent part: "[N]o human authority can, in any case whatever, control or interfere with the rights of conscience . . . ."

to specifically answer the encompassing "right to die" question, the Supreme Court did state that "for purposes of this case, we assume that the United States Constitution would grant a competent person a constitutionally protected right to refuse lifesaving hydration and nutrition." *Id.* at 111 L.Ed.2d at 242.

Thereafter, the general assembly enacted the "Advance Directive for Health Care Act," P.L. 108, no. 24, §5, April 16, 1992; 20 Pa.C.S. §5401 et seq. Section 5402, in addressing the legislative findings and intent of the Act, provides in pertinent part:

*"(a)* The general assembly finds that all competent adults have a qualified right to control decisions relating to their own medical care. This right is subject to certain interest of society, such as maintenance of ethical standards in the medical profession and *the preservation and protection of human life . . .*

*(b)* Nothing in this chapter is intended to condone, authorize or approve mercy killing, euthanasia or *aided suicide or to permit any affirmative or deliberate act* or omission to end life other than as defined in this chapter . . ." 20 Pa.C.S. §5402(a)(b). (emphasis supplied)

It has also been stated that "[t]he Commonwealth is interested in protecting its citizens against acts which endanger their lives. The policy of the law is to protect human life, even the life of a person who wishes to destroy his own. To prove that the victim wanted to die would be no defense to murder." *Commonwealth v. Root,* 191 Pa. Super. 238, 244, 156 A.2d 895, 900 (1959), *rev'd on other grounds,* 403 Pa. 571, 170 A.2d 310 (1961).

Guided by the Superior Court's language in *Commonwealth v. Root* and the legislative intent of the Advance Directive for Health Care Act, we conclude that

the law of Pennsylvania does not recognize an all-encompassing right to die such that the criminal statute which prohibits causing or aiding suicide is rendered unconstitutional. To the contrary, the Pennsylvania Constitution speaks to a right to enjoy and defend life. Defendant's constitutional challenge on this basis is denied.

Defendant also claims that section 2505(b) of the Crimes Code is unconstitutionally vague, as a consequence of which the dismissal of the charge against him is mandated. "In order to comply with the due process clauses of both the Pennsylvania and United States Constitutions, a criminal statute must be sufficiently certain and definite to inform the accused of the acts which the statute is intended to prohibit and which will render one liable to its penalties." *Commonwealth v. Douglass,* 403 Pa. Super. 105, 111, 588 A.2d 53, 56 (1991). Defendant contends that the language of the statute "is unclear as to what the statute means by the phrase 'if his conduct causes such suicide or an attempted suicide.' " (See defendant's omnibus pretrial motion, paragraph 9.) Thus, defendant's constitutional challenge turns on statutory construction.

When called upon to interpret statutory provisions, the court must employ established principles of statutory construction.

"A statute must be construed if possible to give effect to all of its provisions. . . . It is presumed that every word, sentence or provision of a statute is intended for some purpose and accordingly must be given effect; and if a statute contains its own definitions, the meaning of a term as defined at common law, or as construed under prior statutes is not controlling. . . . Finally, . . . sections of the criminal code are necessarily interrelated, and should be read and construed as an entirety. . . .

Thus, [the court] may look to other sections of the Crimes Code as an aid in construing [another section]." *Commonwealth v. Lobiondo,* 501 Pa. 599, 603, 462 A.2d 662, 664 (1983). (citations omitted)

Insofar as the court is permitted to look to other sections of the Crimes Code, we are guided by section 303 pertaining to "causal relationship between conduct and result." This section provides:

*"(a) General rule.*—Conduct is the cause of a result when:

"(1) it is an antecedent but for which the result in question would not have occurred; and

"(2) the relationship between the conduct and result satisfies any additional causal requirements imposed by this title or by the law defining the offense." 18 Pa.C.S. §303(a).

Subsection (d) of section 303 also provides:

*"(d) Absolute liability.*—When causing a particular result is a material element of an offense for which absolute liability is imposed by law, the element is not established unless the actual result is a probable consequence of the conduct of the actor."

The "official comment" to section 303 states in pertinent part: "Subsection (a)(1) establishes the 'but-for' test of causation. Under existing law causation is established if the actor commits an act or sets off a chain of events from which in the common experience of mankind the result is natural or reasonable foreseeable." *Commonwealth v. Bolish,* 381 Pa. 500, 113 A.2d 464 (1955).

In reading section 2505 in conjunction with section 303 of the Crimes Code, a defendant has "caused" a suicide or an attempted suicide, if it is shown beyond a reasonable doubt that "but-for" a defendant's conduct,

the suicide or attempted suicide would not have occurred. Such conduct is distinguishable from conduct which materially aids, assists or helps the commission or attempt to commit the suicide. Based upon this construction, section 2505(b) is not constitutionally infirm.

Defendant also challenges the sufficiency of the evidence presented by the Commonwealth at the preliminary hearing by including a petition for writ of habeas corpus. The Commonwealth aptly cites *Commonwealth v. McBride,* 528 Pa. 153, 595 A.2d 589 (1991) in support of its position that the Commonwealth need only establish a prima facie case and need not, at this juncture, prove the elements of the crime beyond a reasonable doubt. The assertions set forth in defendant's omnibus pretrial motion and the arguments made in his supportive brief tend to challenge the Commonwealth's ability to establish the elements of this crime beyond a reasonable doubt, notwithstanding the fact that defendant couches his argument in terms of a challenge to the demonstration of a prima facie case. The court is satisfied that a prima facie case has been met and defendant's petition for a writ of habeas corpus will be denied.

Defendant also seeks the suppression of all statements made to the police. It is contended that the statements were made in circumstances that were violative of his constitutional rights provided by both the Pennsylvania and United States Constitutions. Defendant claims that the statements made to the investigating troopers at defendant's home and at the state police barracks were the product of custodial interrogation where defendant either had not been timely advised of his *Miranda*[2] rights or had not knowingly, intelligently, and volun-

---

2. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

tarily waived his right to counsel or to remain silent. Defendant also claims that the statements he made while in police custody were the product of an arrest lacking in probable cause, and which as a consequence thereof, the statements must be suppressed.

"Before an individual is subjected to a custodial interrogation, he must make a knowing and intelligent waiver of his privilege against self-incrimination and right to counsel after adequate warning as to those rights. . . . Whether a person is in custody for *Miranda* purposes depends on whether the person is physically denied of his freedom of action in any significant way or is placed in a situation in which he reasonably believes that his freedom of action or movement is restricted by the interrogation. . . . Moreover, the test for custodial interrogation does not depend upon the subjective intent of the law enforcement officer interrogator. Rather, the test focuses on whether the individual being interrogated reasonably believes his freedom of action is being restricted." *Commonwealth v. Williams,* 539 Pa. 61, 74, 650 A.2d 420, 427 (1994). (citations omitted)

At the suppression hearing, the Commonwealth introduced the testimony of Trooper Dubosky, who testified that he arrived at defendant's residence in the early morning hours of October 4, 1995. Three other state troopers were already on the scene in response to a report of a suicide. Trooper Dubosky was in plainclothes and had arrived in an unmarked vehicle.

The discussion of the events of that evening took place in defendant's kitchen. Prior to speaking with defendant, Trooper Dubosky read the *Miranda* warnings from a standard card used regularly by the Pennsylvania State Police to the defendant. Defendant responded that he understood his rights and he then signed the "waiver of rights" form from which Trooper Dubosky had pre-

viously read the *Miranda* warnings. A copy of the original form was introduced into evidence by the Commonwealth at the hearing on the instant motion. Thereafter, defendant spoke to Trooper Dubosky for 10 to 15 minutes. The trooper had not spoken to defendant about the events of that evening prior to the execution of the "waiver of rights" form. During the conversation in the kitchen, defendant was not handcuffed or otherwise restrained. Thereafter, Trooper Dubosky asked defendant to accompany him to the Selinsgrove barracks. While the defendant expressed concern about the condition of his wife and a desire to go to the hospital, he complied with Dubosky's request. Defendant was transported to the barracks in a state police vehicle. He was not handcuffed.

Based upon the testimony recited above, we cannot conclude that the circumstances were such that defendant could have reasonably believed his freedom of action or movement was restricted in any significant way. Moreover, it is clear that he consented to speak to Trooper Dubosky after knowingly, intelligently, and voluntarily waiving his right to counsel and his right to remain silent.

As to statements made after his arrest, defendant claims they must also be suppressed because the arrest lacked probable cause. "The holding of a defendant in custody must be supported by probable cause." *Commonwealth v. Ford,* 539 Pa. 85, 98-99, 650 A.2d 433, 439 (1994). Probable cause existed to take defendant into custody. The state troopers had information from defendant himself that he and his wife had argued throughout the day and evening; the argument continued while both were present in the bedroom; that she stated she would be better off dead; that defendant reached into a night stand, retrieved a loaded pistol, and handed

that pistol to his wife; that she then shot herself, and subsequently died.

Therefore, defendant's motion to suppress his statements at his residence and at the state police barracks will be denied.

An order consistent with this opinion will be entered.

## ORDER

And now, October 25, 1995, the defendant's omnibus pretrial motion is hereby denied.